**ROSS et al., Appellants and Cross–Appellees,**

v.

**ROSS et al., Appellees and Cross–Appellants.**

[Cite as *Ross v. Ross* (1994), 94 Ohio App.3d 123.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64896.

Decided May 2, 1994.

*Marian Rose Nathan,* for appellants and cross-appellees.

*Robert A. Boyd; Svete & McGee Co., L.P.A.,* and *James P. Carrabine; Gallagher, Sharp, Fulton & Norman, Timothy Brick* and *Alton A. Stephens,* for appellees and cross-appellants.

HARPER, Presiding Judge.

Appellants, Ann Dorothy Ross, Lloyd Ross, Sr., Lloyd Ross, Jr., and Rita Ann Ross Knapik, appeal from the disqualification of their counsel by the Cuyahoga County Court of Common Pleas in their malpractice action against appellees, Joseph Gibson, Marc Ziccarelli, and Robert Boyd, and their breach of fiduciary duty against appellee Frances Ross.

Appellee Frances Ross also cross-appeals from the judgment of the trial court denying his motion to dismiss appellants' supplemental complaint. For the reasons that follow, we reverse the trial court's order disqualifying appellants' counsel, and dismiss Frances Ross's cross-appeal for lack of a final appealable order.

## I

Appellants filed an action in malpractice on August 4, 1989, against Ziccarelli, Gibson and Boyd (the lawyers) charging them with improper representation. Also charged in the same complaint was Frances Ross, the executor of the estate of James Ross, for a breach of fiduciary duty. The lawyers represented Frances Ross in probate court proceedings in Geauga County and in a wrongful death proceeding filed in the Lake County Court of Common Pleas. Appellants are next of kin of the deceased, James Ross.

On July 27, 1992 after several continuances and challenges to jurisdiction, appellees, the lawyers, filed a motion to disqualify appellants' counsel. They reasoned that appellants' counsel should be automatically disqualified because she represented appellants during the lawyers' prosecution of the probate and wrongful death actions on behalf of Frances Ross, the executor of the estate of James Ross.

On December 10, 1992, the trial court granted without a hearing the lawyers' motion disqualifying appellants' counsel.

## II

Appellants present the following errors for our review:

"Assignment of Error No. I

"The trial court erred in failing to conduct a full evidentiary hearing before ruling on Defendants–Appellees' motion to disqualify Plaintiffs–Appellants' counsel, Marian Rose Nathan, and abused its discretion by granting the motion without a proper factual and legal foundation.

"Assignment of Error No. II

"The trial court erred in failing to grant Plaintiffs–Appellants leave to file their motion for summary judgment."

Cross-assignment of error of defendant-appellee/cross-appellant, Frances Ross, Executor:

"The trial court committed prejudicial error in denying defendants-appellants' motion to dismiss supplemental complaint for want of jurisdiction and motion to strike supplemental complaint."

We shall first dispose of appellants' second assignment of error and appellee Frances Ross's cross-assignment of error.

■ Appellants argue in their second assignment of error that the trial court erred by denying their leave to file a motion for summary judgment. Appellee argues that the trial court erred by denying her motion to dismiss appellants' supplemental complaint. Because the orders denying the two assigned errors did not determine the action that gave rise to the complaint or prevent a judgment, they are dismissed for lack of a final appealable order. See *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 16 O.O.3d 329, 405 N.E.2d 293; *State v. Torco Termite Pest Control* (1985), 27 Ohio App.3d 233, 27 OBR 274, 500 N.E.2d 401.

## III

Appellants argue in their first assignment of error that the trial court erred by disqualifying their counsel where there is insufficient factual evidence supporting the allegations in support of the disqualification. Appellants also argue that even if there was sufficient factual evidence to support the allegations, the trial court erred by not conducting an evidentiary hearing before counsel was disqualified.

■ Before we address the merits of this assigned error, we again must first decide in light of the most recent decision by the Ohio Supreme Court in *Polikoff*

*v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213, whether an order granting a disqualification of counsel is a final appealable order.

Disqualification of counsel has been held to be appealable immediately, *Russell v. Mercy Hosp.* (1984), 15 Ohio St.3d 37, 15 OBR 136, 472 N.E.2d 695, but because the analysis which has allowed that is now questionable under *Polikoff,* we shall review the effect of *Polikoff* on this almost settled law.

R.C. 2505.02 is the controlling statute of what constitutes a final order subject to appellate review. It defines a "final order" as:

"An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order vacates or sets aside a judgment and grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial."

The statutory definition provides two guidelines for determining a final order:

■ (1) An order (a) affecting a substantial right, (b) determining the action, and (c) preventing a judgment in favor of the party seeking review, is final; and

■ (2) An order (a) affecting a substantial right, and (b) made in (i) a special proceeding, or (ii) upon a summary application in a motion after judgment, is final.

Applying the definition to the instant case, we conclude that disqualification of counsel affects a substantial right. *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 446, 16 O.O.3d 461, 462, 406 N.E.2d 532, 534; *Russell, supra.* The most troubling aspect of R.C. 2505.02 is satisfying the second prong test which is the determination of what constitutes a "special proceeding." The 1981 decision by the Ohio Supreme Court in *Amato v. Gen. Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452, attempted to alleviate this problem by introducing the balancing test. The *Amato* test mandates that the court "weighs the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable." *Id.* at 258, 21 O.O.3d at 161, 423 N.E.2d at 456.

Thus, the balancing test as enunciated by the *Amato* court became the law to be used in Ohio in determining what constitutes a "special proceeding." See *Russell, supra; Banc Ohio Natl. Bank v. Rubicon Cadillac, Inc.* (1984), 11 Ohio St.3d 32, 11 OBR 111, 462 N.E.2d 1379; *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877; *Nelson v. Toledo Oxygen & Equip. Co.* (1992), 63 Ohio St.3d 385, 588 N.E.2d 789. In 1993, the Ohio

Supreme Court concluded that the *Amato* court's balancing test was more of a problem than a solution and overruled the *Amato* decision in *Polikoff, supra.* It held:

"This court's decisions in *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877; *Nelson v. Toledo Oxygen & Equip. Co.* (1992), 63 Ohio St.3d 385, 588 N.E.2d 789; and *Dayton Women's Health Ctr. [v. Enix], supra* [52 Ohio St.3d 67, 555 N.E.2d 956], represent additional examples of the reasons it is necessary for us to return to a more predictable and exacting method of determining what constitutes an order that is entered in a special proceeding. In these cases, the *Amato* balancing test was applied to lead to the following disparate conclusions: a discovery order compelling the disclosure of confidential information was a special proceeding and immediately appealable (*Humphry*); an order determining that an action shall or shall not be maintained as a class action was entered in a special proceeding (*Dayton Women's Health Ctr.*); and an order compelling the production of documents allegedly subject to the work-product exemption was not made in a special proceeding and was not a final appealable order (*Nelson*). The court's application of the balancing test varied with each case, proving that it is impossible to ensure the objective application of subjective criteria. *Accordingly, in the interests of justice, clarity, and judicial economy, we find that it is time to abandon the balancing test and return to the method of determining what constitutes a special proceeding that was in use prior to* Amato. *We believe a more exacting method of analysis practiced by our juristic predecessors will result.*" (Emphasis added.) *Polikoff, supra,* 67 Ohio St.3d at 106–107, 616 N.E.2d at 217–218.

The *Polikoff* court concluded:

"Hence, we determine that orders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02. *Amato* is therefore overruled." *Polikoff,* 67 Ohio St.3d at 107, 616 N.E.2d at 218.

In arriving at the above conclusion, the court resolved to apply the analysis used by courts before *Amato.* In the early case of *William Watson & Co. v. Sullivan* (1855), 5 Ohio St. 42, cited by the *Polikoff* court, the court held that "[t]he legislature seems to regard all proceedings not therefore obtained by suit or action, as a special proceeding. * * *" In *Missionary Soc. of M.E. Church v. Ely* (1897), 56 Ohio St. 405, 47 N.E. 537, another early case defining a "special proceeding," that court held:

"As to the first inquiry, it seems to us there can be but little difficulty. Our code does not, as does the code of New York, specify that every remedy which is not an action is a special proceeding, nor does [*sic* ] our statutes give any

definition of an action or a special proceeding. But we suppose that any ordinary proceedings in a court of justice, by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense, involving the process and pleadings, and ending in a judgment, is an action, *while every proceeding other than an action, where a remedy is sought by an original application to a court for a judgment or an order, is a special proceeding.*" (Emphasis added.) See *Polikoff,* 67 Ohio St.3d at 104, 616 N.E.2d at 216.

In further distinguishing a special proceeding from an ordinary proceeding which is predicated on a pleading in an action, the *Polikoff* court requires a review of the order itself to determine if it is an integral part of the action. Thus, orders in a pretrial proceeding which are designed to aid in the final disposition of the lawsuit which also form the integral part of the action in which they were entered are not orders rendered in a special proceeding. *Id.,* 67 Ohio St.3d at 105, 616 N.E.2d at 217.

In conclusion, a determination of what constitutes a special proceeding requires an examination of the nature of the relief sought. Thus, to qualify as a special proceeding under *Polikoff, supra,* the remedy sought by the aggrieved party (1) must be that which is conferred by an Ohio statute, or (2) it must be a proceeding that represents what is essentially an independent judicial inquiry.

Applying the above analysis to the instant case, we find that disqualification of counsel necessitates an independent judicial inquiry on issues of fact and law which does not arise from the pleading. It is controlled by an independent review mechanism (the Disciplinary Rules) unconnected to the facts and issues in the pleading. It is, therefore, reviewable immediately, as a final appealable order, pursuant to R.C. 2505.02.

IV

Now we turn to the merits of this appeal.

The trial court disqualified appellants' counsel on the motion of the lawyers which alleged that appellants' counsel would be called as a witness in the case. The trial court did not state its reason for the disqualification, but we shall assume from the lawyers' motion that the disqualification was based on DR 5–102.

DR 5–102 provides:

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial

and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

"(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

The lawyers argue that since appellants' counsel had knowledge of the alleged facts of the complaint, she was rightfully disqualified:

"Therefore, Ms. Nathan has personal knowledge regarding the alleged acts of malpractice and it is 'obvious' that she 'ought to be called as a witness on behalf' of her clients. Therefore, the trial court did not abuse its discretion in granting Defendants' motion to disqualify Ms. Nathan."

We are not prepared to sanction such a sweeping interpretation of DR 5–102, as the lawyers' argument completely ignores the fact that DR 5–101 and 5–102 are intended to protect the attorney's own client and preserve the integrity of the legal profession. They are not intended to be used to make an opponent's case easier. Any court, therefore, which is called upon to disqualify an attorney based on DR 5–101 and 5–102 must base its judgment on the narrowly intended purpose of the rules, and must also follow the considerations as described by the rules. Because of the necessary considerations that must be made before disqualifying counsel based on DR 5–102, it is a reversible error for the trial court to summarily disqualify an attorney solely on a paper allegation without a hearing. See *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 258, 31 OBR 459, 460–461, 510 N.E.2d 379, 381.

DR 5–102 provides for a disqualification of counsel who may be a witness on behalf of his client. A counsel who informs the court that he will not be a witness for his client is not disqualified by DR 5–102, *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 607 N.E.2d 1079, unless the court determines that counsel's testimony would be prejudicial to his client. *Mentor Lagoons, supra.* The trial court cannot fully comprehend the prejudicial nature of the testimony without a hearing. DR 5–102 permits a lawyer's testimony on behalf of his client if he qualifies under the exceptions noted in DR 5–101(B)(1) through (4). *State v. Mabry* (1982), 5 Ohio App.3d 13, 5 OBR 14, 449 N.E.2d 16.

DR 5–101(B) provides:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

In the instant case, the record shows that appellants are not seeking to call their attorney as a witness on their behalf. Appellant Dorothy Ross in an affidavit stated that they would not suffer prejudice if their counsel testifies. She stated that she would be prejudiced if their counsel is disqualified after all the years of familiarity with their case, a consideration a court should make in all disqualification cases. Appellants' counsel echoed the same argument and also stated that she was not notified of the disqualification until July 27, 1992, three years after the lawsuit was filed.

In addition to the charges that appellants' counsel "ought to be called as a witness on behalf of her clients," the only proof of a violation of DR 5–102 is the following statements in the lawyers' brief:

"Ms. Nathan's testimony will also be central to the defense of the Defendant-attorneys. Defendants will call on Ms. Nathan to testify regarding her represen-tation of Plaintiffs in the underlying proceedings, the August 7, 1987 letter and all factual circumstances relating to the alleged acts of malpractice. Clearly, such testimony 'is or may be prejudicial' to Plaintiffs.

"It is clear that Ms. Nathan will be a key witness in this case due to her active participation in all of the underlying proceedings. It is well recognized that the roles of an advocate and a witness are inconsistent and the trial court properly disqualified Ms. Nathan as Plaintiffs' counsel."

The trial court did not listen to any argument relating to these charges to determine if they are prejudicial to appellants. We find these charges completely inadequate to disqualify appellants' counsel. The record shows that appellants' counsel at some time wrote a letter to the lawyers informing them that she represents appellants. At no time did appellants' counsel work for the lawyers or represent the executor of the estate in the matter before the court.

The lawyers' argument at best is that at some time during appellants' counsel's representation of her clients and the lawyers' representation of their own client, the executor of the estate, their paths crossed. There is no record that they

prepared their cases together and were involved in any strategy that might work to the disadvantage of appellants if their counsel is called to testify. We do not envision DR 5-102 as requiring disqualification of counsel merely because two counsel's paths crossed during an independent representation of two individuals, one of whom later sued one of the attorneys.

Because the trial court failed to consider the exceptions in DR 5-101(B)(1) through (4), the prejudice the disqualification may have in a case involving an eighty-three-year-old plaintiff, and the lawyers' failure to show any prejudice on appellants if their attorney testifies as a witness, we consider its judgment an abuse of discretion.

We cannot overemphasize the fact that in addition to considering the elements of DR 5-102 and the exceptions in DR 5-101(B)(1) through (4) in a disqualification hearing, trial courts have an obligation to the judicial system to stop any attempt by counsel to use the motion to disqualify as a trial tactic to delay proceedings, deprive the opposing party of counsel of his choice, or as a tool to harass, embarrass, and frustrate the opponent.

Accordingly, for the reasons stated herein, the judgment of the trial court is reversed and the cause is remanded to the trial court to reinstate appellant's counsel unless the trial court determines that counsel's testimony would be prejudicial to her client.

The judgment is reversed and the appeal is dismissed in part.

*Judgment accordingly.*

KRUPANSKY and JOHN V. CORRIGAN, JJ., concur.

JOHN V. CORRIGAN, J., retired, of the Eighth Appellate District, sitting by assignment.