RUSSELL, A MINOR, ET AL., APPELLANTS, *v.*
MERCY HOSPITAL, APPELLEE.

[Cite as Russell *v.* Mercy Hospital (1984), 15 Ohio St. 3d 37.]

(No. 84-646—Decided December 13, 1984.)

*Williams, Jilek & Lafferty Co., L.P.A., Mr. Martin W. Williams, O'Brien & Bauer Co., L.P.A.,* and *Mr. Bernard K. Bauer,* for appellants.

*Messrs. Manahan, Pietrykowski & Bamman* and *Mr. H. William Bamman,* for appellee.

WILLIAM B. BROWN, J. The sole issue presented is whether the granting of a motion to disqualify counsel in a civil case is a final appealable order within the meaning of R.C. 2505.02. This court, after careful con-

sideration, holds that in the civil context, the grant of a motion to disqualify counsel is distinguishable from the denial of a motion to disqualify counsel and constitutes a final appealable order under R.C. 2505.02.

In pertinent part, R.C. 2505.02 defines a final order as "* * * an order affecting a substantial right made in a special proceeding * * *."

R.C. 2505.02 thus sets forth a two-part test. This court, in *Bernbaum* v. *Silverstein* (1980), 62 Ohio St. 2d 445, 446 [16 O.O.3d 461], while holding that the overruling of a motion to disqualify counsel was not a final appealable order, nonetheless acknowledged that such a motion affects a substantial right.[4] This court can perceive of no situation where the rights affected would be any less substantial in the granting of a motion to disqualify counsel than in the denial of a motion to disqualify counsel. Accordingly, upon the authority of *Bernbaum,* this court finds that an order to disqualify counsel affects a substantial right. Thus, the first prong of the test set forth in R.C. 2505.02 is sufficed.

Resolution of whether an order disqualifying counsel in a civil case is appealable will thus depend on whether the second prong of the test is fulfilled, *i.e.,* whether such order was made in a special proceeding. This court, in *Amato* v. *General Motors Corp.* (1981), 67 Ohio St. 2d 253 [21 O.O.3d 158], first noted that modern courts have been less than precise in defining "special proceeding," and then held at 258 that "* * * whether an order is made in a special proceeding is resolved through a balancing test * * * [which] weighs the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after judgment is not practicable." Accord *Banc Ohio Natl. Bank* v. *Rubicon Cadillac, Inc.* (1984), 11 Ohio St. 3d 32.

In *Bernbaum, supra,* this court applied a similar test and concluded that an order *denying* disqualification of counsel is not final and appealable. The issue thus becomes whether there are significant differences between orders denying and granting disqualification with regard to use of judicial resources and practicability of appeal so as to warrant differing results with regard to their immediate appealability.

In *Bernbaum,* this court found that the claimed prejudice in denying a motion to disqualify counsel is effectively reviewable after final judgment, reasoning that any damage is no more curable by an immediate appeal. An order granting disqualification, however, cannot be effectively reviewed after final judgment. The appellate court's power to vacate the judgment appealed from and order a new trial would seldom provide any solace to the party erroneously deprived of chosen counsel. If an order granting dis-

---

[4] In *Bernbaum,* this court stated at 446, fn. 2, as follows:

"Appellees do not dispute the Court of Appeals finding that an order overruling a motion to disqualify counsel affects a 'substantial right.' Such a determination is clearly supportable."

qualification is erroneous, correcting it by an appeal at the end of the case would require a party to show that the handling of his case by one counsel caused him prejudice, *i.e.,* caused a difference in result. This would appear to be an "insurmountable burden."[5]

In many cases it would not be possible to make the necessary judgment based on any objective standards. A trial lawyer's ability to persuade a jury to return the largest possible verdict may have been one of the key factors in the client's original selection and hiring decision. The courts would have to decide whether and how the original counsel might have handled the matter differently, *i.e.,* taken more or less discovery, called more or fewer witnesses, asked or refrained from asking particular questions, introduced or refrained from introducing particular evidence, raised different objections, adopted different trial strategies, made other or more persuasive arguments to the jury, and what the effect on the verdict might have been. A court would have a most difficult time attempting to determine by any objective test whether that lawyer's particular skills would have caused a jury to award greater damages than it returned after listening to a different attorney whom the client did not originally wish to retain. The argument in most cases would quickly degenerate into speculation and hindsight.

One court noted most aptly as follows:

"Most able lawyers, given a chance to review the results of their initial efforts, could discover ways in which they might have improved on their performance. Armed with knowledge of the judge's and jury's reactions to his handling of the various difficult questions presented by the trial of a lawsuit, any respectable counsel could easily develop better techniques or approaches for dealing with them than he could without that knowledge. More important, almost any attorney, knowing the outcome of all the twists and turns of a hotly litigated matter, could tell anyone interested how he would have tried the case and won it had he been the trial lawyer rather than someone less talented or creative. Yet, if appeals are delayed until after trial, courts would be required to deal with precisely that sort of *post hoc* rationalization in every case. The tales and explanations of how original counsel could have won the case, had he been permitted to try it, would be legion and most would be at least superficially plausible. From a practical standpoint, courts would have no way of determining whether the original counsel would have acted as he says, after the fact, that he would. Even assuming the best of faith on the part of original counsel, it would be difficult for him to put the events which occurred at the trial out of mind when following a verdict his client wishes to reject, he is com-

---

[5] *Armstrong* v. *McAlpin* (C.A. 2, 1980), 625 F. 2d 433, 440-441, vacated on other grounds (1981), 449 U.S. 1106.

pelled to tell the court how he would have handled the matter differently."[6]

The question of what constitutes prejudice would also prove unusually troublesome. If a court somehow concluded that the attorney originally selected might have obtained a higher verdict for a plaintiff or a lower verdict for a defendant, and found the extent of that difference as a result, how much higher or lower would that verdict have to be before sufficient prejudice would attach to warrant reversal? In short, in civil cases the courts would be plunged into a morass of speculation were review of the propriety of the granting of a motion to disqualify counsel delayed until after the trial had occurred.

The harm caused by postponing review of an order granting disqualification of counsel would in most instances be irreparable. In contrast to a motion denying disqualification, a motion so granting is necessarily more conclusive. Its effects are immediate and measurable. It has irreparable and unreviewable consequences for the individual who hired the disqualified counsel as well as for disqualified counsel.[7]

When a motion for disqualification is granted, a legitimate interest of a party is necessarily implicated—the right to counsel of one's choice. The converse is not necessarily true. It would indeed be difficult, if not impossible, for a new attorney to master "the nuances of the legal and factual matters" late in the litigation of a complex case. Comment, The Availability of the Work Product of a Disqualified Attorney: What Standard? (1979), 127 U. Pa. L. Rev. 1607, 1608-1609, fn. 12. See, *e.g., Central Milk Producers Co-op* v. *Sentry Food Stores* (C.A. 8, 1978), 573 F. 2d 988, 992. Evidence may be impossible to reconstruct because witnesses are unavailable and real evidence has been lost or stolen. Comment, *supra,* at 1634. See, also, *Canadian Gulf Lines* v. *Triton Internatl. Carriers* (D. Conn. 1976), 434 F. Supp. 691, 696. Further, proof of the often subtle ramifications of an order disqualifying counsel may be impossible at times to adequately present.

Correspondingly, and unlike the denial of a motion disqualifying counsel, which is " 'subject to reconsideration from time to time' " during the progress of the trial,[8] a trial court, for all practical purposes, will be unlikely to ever have an opportunity to change its ruling granting disqualification. Once a person's chosen attorney has been barred from representing that client, the client must then abruptly change his position

---

[6] *Gough* v. *Perkowski* (C.A. 9, 1982), 694 F. 2d 1140, 1144.

[7] Indeed, if the party who suffers the erroneous grant of a disqualification motion prevails in the action, the disqualified counsel is not likely to find any remedy for the damage to his reputation or to his pocketbook.

[8] See *Firestone Tire & Rubber Co.* v. *Risjord* (1981), 449 U.S. 368, 380 (Rehnquist, J., concurring in result only).

in retaining another attorney or choosing to forego representation. Substitute counsel will, no doubt, be secured. There can be little doubt a disqualification grant is immediate and conclusive.

In weighing the interests of judicial economy and misallocation of judicial resources, this court, while reaffirming the *Bernbaum* decision that the balance tips in favor of delaying review of orders denying disqualification, nonetheless holds that the balance tips in favor of immediate review when there is a grant of disqualification. The finality of the two orders is as dissimilar as their results. An order granting disqualification seriously disrupts the progress of litigation while new counsel is obtained, but one refusing such relief merely allows the action to proceed and has no permanent effect of any kind. A mere refusal to act is necessarily less conclusive than the affirmative grant of the requested relief.

While delaying appeals of an order granting a motion to disqualify counsel until after final judgment might conceivably result in a judicial savings in some cases in which the order is upheld or post-trial appeal is not taken, this factor is outweighed by the inordinate loss of judicial time in attempting to reconstruct hypothetical trials and then conducting new trials where it is determined that the disqualification grant was in error. Moreover, since a factual showing as to how the original counsel would have handled the case differently would be necessary before reversible error could be found, it would be necessary to conduct an onerous post-trial reconstruction of the case.

In contrast, delaying review of an order denying a motion to disqualify counsel until after final judgment *is* consistent with the interests of judicial economy. First, a contrary rule would assure pretrial appeals in almost all cases in which motions for disqualification were made. The attractiveness of the delaying tactic might prove irresistible. Moreover, such a rule might well encourage the filing of frivolous motions solely in order to take advantage of the delay inherent in pretrial appellate review. The adverse effects upon the orderly flow of litigation could be substantial.

It appears far less likely that appeals from orders granting disqualification motions will be taken for purely tactical reasons, however. The granting of a disqualification motion by a trial court is a fair indication that a legitimate and nonfrivolous issue has been raised. It is incumbent upon courts, when a legitimate question of propriety arises, to dispose of matters promptly in order to facilitate and improve the justice system. Immediate appealability of orders granting disqualification motions fulfills this purpose.

It is further noted this court's decision today is not inconsistent with United States Supreme Court precedent. In *Firestone Tire & Rubber Co. v. Risjord* (1981), 449 U.S. 368, 377-379, the Supreme Court held that an order denying a motion to disqualify counsel was not immediately appealable because it could be effectively reviewed after final judgment. Accord *Bernbaum, supra.* That court, however, specifically reserved the

question of disqualification motions in criminal cases and of pretrial grants of disqualification motions in criminal and civil cases. Just recently, in *Flanagan* v. *United States* (1984), 79 L. Ed. 2d 288, the United States Supreme Court held that a pretrial order disqualifying defense counsel in a criminal prosecution is not immediately appealable.

The result in *Flanagan* does not necessarily mandate that a similar result be reached in the civil context. This court agrees with the views expressed in *Koller* v. *Richardson-Merrell, Inc.* (C.A.D.C. 1984), 737 F. 2d 1038, 1051, that there are distinct reasons for differing results in the civil and criminal context as to the immediate appealability of motions ordering disqualification of counsel:

"Not only is the constitutional requirement of speedy adjudication lacking in civil cases, but it has become apparent that the interests of the parties in proceeding expeditiously may diverge significantly. The tactical use of motions to disqualify counsel in order to delay proceedings, deprive the opposing party of counsel of its choice, and harass and embarrass the opponent has become so prevalent in large civil cases in recent years as to prompt frequent judicial and academic commentary. * * * We are aware of no comparable phenomenon in criminal cases. The apparent interest of many civil litigants in delaying adjudication and their use of disqualification motions to help accomplish that end militate in favor of immediate review of orders granting such motions. To insulate from prompt review an erroneous order granting a motion to disqualify counsel would only raise the stakes in this dangerous game."

This court would further add that the presumption of prejudice that would mandate a new trial if error were established under the criminal law simply does not exist under the civil law.

For the foregoing reasons, the judgment of the court of appeals is reversed and the cause remanded to the appellate court for a determination as to whether the trial court abused its discretion in disqualifying counsel.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.