SWEARINGEN et al., Appellants,

v.

WASTE TECHNOLOGIES INDUSTRIES et al., Appellees.

[Cite as *Swearingen v. Waste Technologies Industries* (1999), 134 Ohio App.3d 702.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

Nos. 98CO26 and 98CO35.

Decided Sept. 21, 1999.

704

*Ian Robinson* and *Michael D. Hausfeld,* for appellants.

*Charles H. Waterman* and *James J. Hughes III,* for appellees.

VUKOVICH, Judge.

The following appeal arises from the decision of the Columbiana County Court of Common Pleas granting in part and denying in part a motion to admit counsel *pro hac vice.* For the reasons set forth below, the decision of the trial court is affirmed.

## I. FACTS

This matter arises out of an original complaint filed on January 9, 1997 by numerous plaintiffs against Waste Technologies Industries and its parent companies (hereinafter referred to as "appellees"). The complaint sought certification of a class action suit in addition to alleging claims of negligence, nuisance, and trespass. All plaintiffs were property owners in the vicinity of appellees' operations and alleged that as a result of the emissions from appellees' plant,

they had suffered damage to the value of their respective properties. Among the plaintiffs were Teresa Swearingen and Alonzo Spencer ("appellants").

In response to the initial complaint, appellees filed an answer and counterclaims against all plaintiffs on March 20, 1997. The counterclaims were based upon actions for abuse of process, frivolous conduct, interference with business relationships, and defamation. The majority of the allegations relating to the defamation counterclaim were directly related to actions performed by appellants as compared to the remaining plaintiffs. In addition to the monetary damages sought by appellees, a request was made that the plaintiffs included in the action be declared vexatious litigators pursuant to R.C. 2323.52. An answer and affirmative defenses were entered to the counterclaims by the same counsel who filed the original action for the plaintiffs.

On July 17, 1997, an initial pretrial/scheduling conference was held by the trial court. In preparation for this hearing, both parties were required to submit pretrial statements to the trial court addressing the nature of the action and the progress that had been made in dealing with them. Appellants' original trial counsel filed the required statement and attended the hearing on behalf of all of the plaintiffs. At that time, counsel did not express any concerns as to representing all plaintiffs on both the original action and the counterclaims. In that two of the three attorneys representing the plaintiffs were out-of-state attorneys, the trial court ordered at this initial hearing that a motion for *pro hac vice* admission be filed within seven days. In response, a motion was filed on July 24, 1997 requesting the trial court's permission to have Louis M. Tarasi, Jr. and Matthew A. Hartley admitted to the Columbiana County Court of Common Pleas solely for the present lawsuit. Appellees filed a motion in opposition to the admission of attorneys Tarasi and Hartley. By way of a judgment entry dated August 19, 1997, the trial court granted the motion for *pro hac vice* admission in regard to attorney Tarasi but denied the motion in regard to attorney Hartley due to a failure to meet the applicable requirements.

Subsequent to the trial court's decision on the plaintiffs' initial motion for *pro hac vice* admission, appellants filed a second motion to admit counsel *pro hac vice* on March 6, 1998. The admission of counsel was requested by appellants, as they sought representation by Michael D. Hausfeld, Matthew F. Pawa, and Richard S. Lewis of the Washington, D.C. firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C., as to the counterclaims only. It should be noted that between the time the complaint was filed in January 1997 and the time the second *pro hac vice* motion was filed in March 1998, original counsel for plaintiffs handled all matters related to this case. Counsel were responsible for filing a myriad of motions and requests during this period of time in addition to responding to numerous

motions and requests filed by appellees. Furthermore, significant discovery had been performed by counsel.

Appellees filed a reply to appellants' motion on March 17, 1998. In this reply, appellees began by pointing out that original trial counsel had represented appellants on both the complaint and the counterclaims from the onset of this action. Appellees went on to express their concern as to the manageability of the lawsuit, or the lack thereof, if three additional attorneys were introduced into the case at that point in the proceedings. After having reviewed the arguments proposed by the parties on this issue, the trial court issued its decision by way of its March 30, 1998 judgment entry. In its decision, the trial court granted the motion as related to attorney Hausfeld and attorney Pawa, subject to the conditions that they provide the court with a written affidavit as to any disciplinary proceedings in the past ten years, that all pleadings be co-signed by counsel admitted in Ohio, and that all evidentiary proceedings be attended by co-counsel admitted in Ohio. However, the trial court specifically denied appellants' request to have newly admitted counsel represent them solely on the counterclaims. The trial court indicated that due to the complexity of the litigation it would only admit counsel on the condition that they represent appellants on all matters in concert with appellants' original counsel. It was further the decision of the trial court to deny admission to attorney Richard S. Lewis. The trial court concluded by advising attorneys Hausfeld and Pawa to file notices of appearance with the court once they had fulfilled the conditions previously outlined.

Original counsel for plaintiffs continued to conduct discovery during this period of time related to depositions, expert witnesses, lay witnesses, interrogatories, and requests for production of documents. Moreover, on April 3, 1998, original trial counsel filed the initial pretrial conference statement required by the trial court, which indicated the ongoing progress that was being made in readying this matter for trial. A portion of this required statement is entitled "Special Problems" and is provided so that counsel may express any concerns as to the pending litigation. Notably absent from this statement by plaintiffs' original trial counsel is any indication that difficulties were being experienced in the representation of appellants or any other plaintiffs related to the counterclaims.

In response to the trial court's decision on the *pro hac vice* motion, appellants filed a motion to reconsider the decision to deny the request for limited representation and the denial of admission to attorney Richard S. Lewis. The trial court addressed this request in its judgment entry dated April 13, 1998. While the trial court refused to modify its previous order because such a modification would create an undue burden, it did indicate that counsel would be permitted to divide duties among themselves as they saw fit. On April 24, 1998, appellants filed a timely notice of appeal from the trial court's March 30, 1998 and

April 13, 1998 judgment entries addressing the second motion to admit counsel *pro hac vice.*

In light of the failure of attorneys Hausfeld and Pawa to comply with the conditions set forth by the trial court in its March 30, 1998 judgment entry, the trial court *sua sponte* revisited the issue by way of its May 12, 1998 judgment entry. In its entry the trial court provided attorney Hausfeld and attorney Pawa fourteen days to comply with the previously stated conditions and file notices of appearance on the record. Failure to do so would result in the forfeiture of any considerations as to notice, appearance, or contact with the court on the pending case. It is from this entry that appellants filed a second notice of appeal with this court on May 15, 1998. Due to the related nature of the appeals, a motion to consolidate was granted on March 22, 1999.

Appellants raise two assignments of error on appeal. However, before this court can address these assignments, we must first determine whether the entries appealed from constitute final appealable orders in light of appellees' challenges to them.

## II. APPEALABILITY OF TRIAL COURT'S ORDERS

Appellees argue that the three orders appellants appeal from related to the issue of *pro hac vice* admission of counsel are not final and appealable pursuant to R.C. 2505.02. Although this section of the code was amended as recently as July 22, 1998 by Sub.H.B. No. 394, section (D) of the statute clearly indicates:

"This section applies to and governs *any action, including an appeal,* that is pending in any court on the effective date of this amendment * * *." (Emphasis added.) .

Under the newly revised statute, five categories are delineated under which an order may be viewed as being a "final appealable order":

"(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

"(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

"(3) An order that vacates or sets aside a judgment or grants a new trial;

"(4) An order that grants or denies a provisional remedy and to which both of the following apply:

"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

"(b) The appealing party would not be afforded a meaningful or effective remedy by appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

"(5) An order that determines that an action may or may not be maintained as a class action."

■ As to that portion of the trial court's judgment entries that permitted attorneys Hausfeld and Pawa to represent appellants subject to certain conditions, that decision does not constitute a final appealable order that is reviewable by this court. None of the categories itemized in R.C. 2505.02(B) applies, as appellants essentially were granted that for which they asked. A review of the March 6, 1998 motion reveals that appellants had requested the trial court to grant *pro hac vice* admission to the two attorneys in the pending case as to the counterclaims only. Pursuant to its March 30, 1998 judgment entry, the court specified that it in fact would "admit Attorney[s] Michael D. Hausfeld and Matthew F. Pawa to practice before the Columbiana County Court of Common Pleas Pro Hac Vice in the within case * * *." While the trial court would not permit the attorneys to enter the case in a limited capacity as desired, the court did state in its April 13, 1998 entry that "[c]ounsel representing movants [appellants] however are free amongst themselves to make division of duties in regard to this lawsuit." Essentially, the relief requested was granted by the trial court in regard to attorneys Hausfeld and Pawa.

■ While appellants take issue with the fact that the trial court placed conditions on the admission of attorneys Hausfeld and Pawa, these conditions do not make an otherwise unappealable order appealable. It is well settled that in addition to having discretion over the admission of out-of-state counsel, a trial court has "the inherent power to regulate the practice [of law] before it and protect the integrity of its proceedings." *State v. Busch* (1996), 76 Ohio St.3d 613, 615, 669 N.E.2d 1125, 1128. Therefore, out-of-state lawyers have no absolute right under state or federal law to practice in an Ohio court. *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 33, 27 OBR 447, 449, 501 N.E.2d 617, 619–620, citing *Leis v. Flynt* (1979), 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717. In that trial courts are at the front lines of the administration of justice, they deserve the discretion to be able to craft a solution that works in any given case. *Busch, supra.*

As discussed under the facts of this case, appellants had been represented by original counsel as to the original complaint and the counterclaims for approxi-

mately one full year before a motion for *pro hac vice* admission was filed seeking additional out-of-state counsel as to the counterclaims. During that one-year period, original counsel filed an answer to the counterclaims, appeared at all scheduled matters, filed pretrial statements and conducted extensive discovery. At no time did original counsel express any difficulty in handling the counterclaims.

As the trial court indicated, to permit additional counsel so late in the proceedings to represent appellants only as to the counterclaims would have created an undue burden on the court in handling the case. Having five different attorneys from multiple jurisdictions representing appellants as to different portions of the case would invite confusion to an already difficult action. As the trial court stated in its April 13, 1998 judgment entry, attempting to have so many counsel in the complex litigation at hand differentiate as to discovery, responsibility, jury challenges, etc. would be extremely difficult. These concerns of the trial court are not unreasonable and thus provide sound support for its ultimate decision.

The decision to admit counsel only if they represent appellants as to the whole action in conjunction with original counsel is consistent with the court's inherent power to regulate the practice of law before it and protect the integrity of the proceedings. *Busch, supra.* The trial court had already accommodated one *pro hac vice* motion some eight months into the case when it admitted attorney Tarasi for the purposes of representing appellants. The admission of additional counsel so late in the proceedings would only serve to undermine the vast amount of progress being made in the extensive discovery process in this case and would likely necessitate delays in reaching a final determination of this matter. In that the trial court's justification for its decision was reasonable, and based on the discussion herein, it cannot be held that the trial court placed an inordinate burden upon appellants or their counsel by placing conditions on the *pro hac vice* admission of attorneys Hausfeld and Pawa.

While appellants argue that the trial court's decision forces attorney Hausfeld and attorney Pawa to represent them on matters beyond the scope of the retainer agreement, that is not the case. As the trial court specified in its April 13, 1998 entry and as indicated above, while it would not formally journalize appellants' request to admit counsel only on the counterclaims due to concerns as to the manageability of the case, "counsel representing movants [appellants] * * * are free *amongst themselves* to make division of duties in regard to this lawsuit." (Emphasis added.)

Based upon this statement, although counsel would not formally be permitted to represent appellants as to the counterclaims, an agreement among all counsel representing appellants could be made to divide the representation accordingly.

The trial court's decision not to journalize this division of duties served the purpose of mandating cooperation among all counsel for appellants and thereby minimized any burden on the court in handling the administration of the case. Based upon this reasoning, this court may similarly dispose of appellants' claim that the trial court's decision required attorney Hausfeld and attorney Pawa to accept employment for which they were not prepared. By permitting counsel to divide duties among themselves on the case, counsel would still be able to represent appellants on the matters in which they were most prepared.

 As to appellants' assertion that it is appropriate to limit counsel's representation solely to the counterclaims of an action, that is not mandatory. As the Ohio Supreme Court indicated in *Busch*, it is within the court's discretion to adopt measures in any given case to ensure the integrity of the proceedings. Due to the complex nature of the present proceedings and the trial court's desire not to further complicate them, it was well within the court's discretion to adopt the decision it did as to the admission of additional counsel. After all, it is the trial judge rather than counsel who is responsible for controlling the proceedings and ensuring that matters run smoothly and efficiently. Merely because counsel are not granted their requests down to the last detail does not mean that an appealable issue is created. To permit such a result and have counsel control the atmosphere of the court would place insurmountable burdens on an already strained system.

The court's decision not to journalize appellants' request to admit counsel solely as to the counterclaims similarly does not result in any of the additional difficulties cited by appellants. While the trial court insisted that attorneys Hausfeld and Pawa be admitted as to the action in its entirety, as previously stated counsel could decide among themselves to divide duties. Such actions would avoid the difficulties raised by appellants as to counsel accepting employment on a matter in which counsel has already been obtained. Additionally, such an arrangement would facilitate a division of fees according to the work performed, thereby avoiding any ethical concerns as to fee-splitting. Finally, while appellants maintain that admitting counsel only as to the counterclaims would assist in the orderly and efficient administration of the litigation, the trial court is in the best position to determine whether this truly is the case. *Busch, supra.* In light of the extensive period of time that has passed since the action was originally filed, as well as the progress that has been made in the case, the trial court was well within its discretion to determine that the just administration of the case would best be served if counsel were admitted based upon the conditions set forth in its entry.

Accordingly, the trial court's decision as related to attorneys Hausfeld and Pawa cannot be considered a final appealable order. The court's decision does

not squarely fit into any of the categories listed in R.C. 2505.02(B), as appellants were granted the relief requested subject to conditions that were properly emplaced by the trial court. This determination disposes of appellants' first assignment of error as it relates to the *pro hac vice* admission of attorneys Hausfeld and Pawa.

As to the appealability of the trial court's unconditional refusal to admit attorney Richard S. Lewis *pro hac vice*, a review of appellees' arguments reveals that they solely rely upon the grounds set forth under R.C. 2505.02(B)(2) in support of a finding that the orders appealed from are not final and appealable. Appellees argue that pursuant to case law a substantial right had not been affected nor had there been a special proceeding as required by statute when appellants were denied the ability to admit counsel *pro hac vice*. Therefore, it is asserted that appellants should not be permitted to proceed on this appeal.

However, appellees do not address R.C. 2505.02(B)(4) in their analysis of whether appellants appealed from a final order. A review of this subsection of the statute disposes of the need to analyze whether a substantial right was affected during the course of a special proceeding. The first step in the analysis under R.C. 2505.02(B)(4) is to determine whether the order at issue grants or denies a provisional remedy. A definition of a "provisional remedy" is provided in the statute, which states as follows:

"(A)(3) 'Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence."

Furthermore, an "ancillary proceeding" is defined by Black's Law Dictionary as follows:

"One growing out of or auxiliary to another action or suit, or which is subordinate to or in aid of a primary action, either at law or in equity. * * * In state courts, a procedural undertaking in aid of the principal action; for example, a bill for discovery in aid of a lawsuit or a garnishment proceeding." Black's Law Dictionary (6 Ed.1990) 86.

Once it is determined whether a provisional remedy is an issue, the focus then turns to the two factors listed in R.C. 2505.02(B)(4)(a) and (b).

In the case *sub judice*, the entries appealed from all involve appellants' motion for admission of attorney Lewis *pro hac vice*. The proceedings that resulted from this motion should be considered as ancillary in nature, as they are clearly auxiliary to the underlying, primary class action suit. In that it is a proceeding ancillary to the main action, it meets the criterion of a provisional remedy as defined by the statute. While the statute does list certain actions which are to be

considered provisional remedies, it clearly does not provide an exhaustive list as evidenced by the "not limited to" language included in the definition.

Having determined that a provisional remedy is at issue, we must now determine whether both R.C. 2505.02(B)(4)(a) and (b) apply. Subsection (a) is met, as the trial court's decision makes a final determination as to the *pro hac vice* motion and prevents a judgment in favor of appellants as to the motion. The three entries issued by the trial court preclude attorney Lewis from appearing in the action. The trial court having decided not to provide the relief sought by appellants, there was no further opportunity to petition the court for the remedy being sought. The underlying action would have continued on its way and appellants would have been forced to proceed without the aid of the counsel requested. Thus, subsection (a) has been met.

Under subsection (b) of R.C. 2505.02(B)(4), it must also be found that the appellants would not be afforded a meaningful remedy from an appeal following the conclusion of the primary action. This requirement also has been met in the case at bar. In the event this appeal is not granted and appellants are compelled to proceed on the merits of the case *sub judice* without the counsel desired, no meaningful or effective remedy can be provided on a later appeal.

The Ohio Supreme Court dealt with an analogous situation when addressing an order granting disqualification of counsel in *Russell v. Mercy Hosp.* (1984), 15 Ohio St.3d 37, 15 OBR 136, 472 N.E.2d 695. In its opinion, the court held that such an order could not be effectively reviewed after final judgment, as it would require a party to show that the handling of his case by desired counsel would have caused a different result. *Id.* at 40, 15 OBR at 138, 472 N.E.2d at 697. Such a requirement was viewed as being an "insurmountable burden," as appellant would have to illustrate to the appellate court the prejudice that resulted from the failure to appoint desired counsel. *Id.*

"A court would have a most difficult time attempting to determine by any objective test whether that lawyer's particular skills would have caused a jury to award greater damages than it returned after listening to a different attorney whom the client did not originally wish to retain." *Id.*

Any argument on appeal would depend largely on speculation and hindsight. *Id.* Therefore, it cannot be held that effective post-trial review is available for such issues. *In re Myers* (1995), 107 Ohio App.3d 489, 492, 669 N.E.2d 53, 54–55.

This precedent in which counsel was disqualified is analogous to the situation at bar where counsel was denied *pro hac vice* admission. Appellants would be left without a meaningful remedy on appeal following the conclusion of the case, as they would be forced to speculate as to how attorney Lewis's representation would have altered the outcome of the proceedings. Therefore, the denial of that

portion of the *pro hac vice* motion that requested admission of attorney Lewis is held to be final and appealable. Thus, we will now turn to addressing appellants' second assignment or error.

### III. ASSIGNMENT OF ERROR NUMBER TWO

Appellants' second assignment of error reads:

"The trial court erred in denying, without reason or cause, *pro hac vice* admission to attorney Richard S. Lewis, who is as qualified as his colleagues who were held to be qualified for admission, and who oversees his firm's defense of the counterclaims."

Appellants argue that the trial court erred in denying the admission of attorney Lewis in that he was allegedly qualified to represent appellants in regard to the counterclaims. Furthermore, appellants criticize the trial court for failing to delineate its reasoning behind the denial of admission and for not holding a hearing in regard to the motion.

### A. APPLICABLE LAW

The decision whether to permit representation by out-of-state counsel in an Ohio court is a matter within the sound discretion of the trial court. *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 33, 27 OBR 447, 449, 501 N.E.2d 617, 619–620. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880. Absent a showing of abuse, the decision of a trial court will be upheld on appeal.

In most instances where an abuse-of-discretion standard is applicable and the trial court's decision is reversed on appeal it is the result of the decision simply being unreasonable rather than unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601. A trial court's decision may be found to be unreasonable by an appellate court only "if there is no sound reasoning process that would support that decision." *Id.* An appellate court is not permitted to find an abuse of discretion merely because it would have arrived at a different result if it had reviewed the matter *de novo. Id.*

In order to provide guidance to trial courts on such matters, the Tenth District Court of Appeals provided a nonexclusive list of factors to be considered when determining whether to admit counsel *pro hac vice*. These factors are as follows:

"(1) Did there exist a long-standing close personal relationship between the party and the out-of-state counsel? (2) Is the out-of-state counsel the customary counsel for the party in jurisdictions where such out-of-state counsel is admitted to practice? and (3) What is the situation with respect to the availability of counsel admitted to practice in Ohio who are competent to represent the party in the case?" *State v. Ross* (1973), 36 Ohio App.2d 185, 197, 65 O.O.2d 316, 323, 304 N.E.2d 396, 404.

Both appellants and appellees cite *Ross* as authoritative on the issue.

### B. ANALYSIS

A review of the record in the case *sub judice* provides ample support for the trial court's decision to deny *pro hac vice* admission to attorney Lewis. The factors set forth in *Ross* fail to provide any support for appellants' position.

Although appellants assert that they are able to establish a long-standing, close relationship with attorney Lewis, the record does not support such a conclusion. According to attorney Lewis's April 8, 1998 affidavit that was attached to a memorandum in support of a motion to reconsider the denial of admission *pro hac vice*, he had an established attorney-client relationship with appellants for a period of approximately six months. Based upon this statement, attorney Lewis would have become involved with appellants in approximately October 1997. In that the original action was filed in January 1997, appellants cannot even establish that they had been involved with Lewis during the entirety of the present claim. In fact, the complaint had been pending for nine months before Lewis became involved and the counterclaims had been pending for seven months. Such a brief period of involvement that only begins *well after* the relevant action has been initiated can hardly be held to establish a "long-standing close personal relationship" between appellants and attorney Lewis as anticipated by *Ross*.

In contrast, attorney Tarasi, whom the court did admit *pro hac vice* early in the proceedings, does have the close-knit relationship referred to by *Ross*. Attorney Tarasi not only represented appellants from the beginning of the present case but also represented them in previous litigation against appellees. This interaction is the type of relationship that needs to be established rather than the relatively brief, unsubstantial role attorney Lewis has played.

Appellants attempt to discount the second factor under *Ross* by stating that they have never been defendants in matters such as those raised in the counter-claims. As appellee correctly points out, such a lack of prior involvement serves only to work against appellants and their quest to have attorney Lewis admitted *pro hac vice*. The fact that attorney Lewis has never represented appellants on

similar issues further undercuts any argument proposed that a close, personal relationship had been established between the parties. Additionally, the second factor addresses the issue of whether attorney Lewis is "customary counsel" for appellants. No indication is of record that this is in fact the case.

As to the third factor under *Ross,* appellants make the argument that it is unlikely that any Ohio counsel would provide representation as to the counterclaims due to the nature of the underlying action. However, the sole support provided for this assertion is self-serving affidavits provided by attorney Pawa and attorney Lewis. In direct contrast to these assertions is the fact that attorney Tarasi and attorney Lancione, appellants' original counsel, have represented appellants both as to the original complaint and counterclaims from the onset of the litigation. Furthermore, no concern or difficulty has been expressed by either original counsel in the July 17, 1997 pretrial statement or the April 3, 1998 pretrial conference statement as to their ability to continue representing appellants on the issues raised in the counterclaims. Therefore, it can be said that not only does other counsel exist to represent appellants regarding the counterclaim but the other counsel has actively represented appellants for months on these very counterclaims.

In addition to having the three factors outlined in *Ross* play against them, appellants' position suffers further harm when the arguments addressed in the first section of this opinion are incorporated herein under the second assignment of error. The trial judge was faced with the decision of whether to admit three additional out-of-state attorneys into already complex litigation at a point in time when the case had already been pending for one year. Substantial progress had been made towards preparing the case for the November 1998 trial date when appellants filed their *pro hac vice* motion in March 1998. As the court has the inherent power to regulate the proceedings before it, it cannot be held that an abuse of discretion occurred. See *Busch, supra.* The decision of the trial court not to admit attorney Lewis cannot be viewed as eliminating appellants' right to choose desired counsel, as appellants were already represented by multiple attorneys of their own choosing. The decision of the trial court served solely to limit the number of chosen counsel that would be permitted to represent appellants in order to maintain order in the case before it.

This court should note that in situations such as this, it is inclined to weigh the interest of the litigant in obtaining counsel against the prejudice to the opposing parties as well as the desire to maintain the orderly administration of justice. Through this comparison the objective is to determine the reasonableness of the trial court's decision and whether or not it abused its discretion. Such an analysis in the case at bar clearly supports the conclusion reached by this court. Any prejudice suffered by appellants is minimal, as they are already

represented by numerous, competent attorneys. Furthermore, as described previously, the admission of an additional attorney who has no long-term relationship with appellants would serve only to place an additional burden on appellees and the trial court at such a late juncture in the proceedings.

While appellants also allege error in that the trial court did not hold a hearing prior to denying the *pro hac vice* motion, this argument is similarly without merit. In support of their argument, appellants cite a single unreported decision out of the Twelfth District. In that case, *N.B. & S.B. v. Alleged Dependent Children* (Aug. 1, 1994), Butler App. Nos. CA93–09–183 and CA93–09–184, unreported, 1994 WL 394972, it was determined that a hearing must be held before a trial court *revoked pro hac vice* status in a matter where the attorney had already been actively representing a party in an attempt to maintain custody of a child. The appellate court determined that due to the gravity of the action, a hearing was appropriate prior to the revocation, as counsel had already been active in the protection of the client's parental rights. *Id.* at 2. As support, the appellate court cited *Cooper v. Hutchinson* (C.A.3, 1950), 184 F.2d 119. In *Cooper,* the trial court summarily broke off the attorney-client relationship in a capital case. The appellate court determined that in such matters a hearing was necessary prior to the termination of the attorney's right to appear on behalf of his client.

While both of these cases deal with the revocation of an attorney's ability to represent a client, appellants argue that this same philosophy should also apply to instances when a party's motion for *pro hac vice* admission of counsel is originally denied. Appellants cite *Royal Indemn. Co., supra,* for the proposition that "the same standard governs both admission and revocation" of *pro hac vice* status. However, a review of *Royal Indemn. Co.* reveals that the Ohio Supreme Court has only stated that both admission and revocation issues shall be reviewed under the abuse-of-discretion standard. It does not necessarily follow that every premise of law applicable to the revocation of *pro hac vice* admission applies to an original denial of *pro hac vice* admission.

As to the issue of whether a hearing should be afforded, a court is dealing with quite different situations when addressing revocation as compared to an original denial. In the instance where *pro hac vice* status is revoked, a stronger argument can be made for a hearing, as prejudice to the represented party is more likely to occur. The represented party has already begun proceedings with admitted counsel. If that counsel is to be forced to cease representation, the client will be forced to acquire new counsel in the midst of the case. Therefore, new counsel will have to become acquainted with a case that is already underway. In the instance where counsel is denied the opportunity to represent a party *pro hac vice,* while the party may not be afforded the counsel he originally desired, he

has not suffered the prejudice that occurs when *pro hac vice* status is revoked. Thus, this court cannot say that a hearing is required when a *pro hac vice* motion is denied merely because a hearing may be appropriate when a revocation occurs.

Furthermore, as appellees point out, appellants provide no authority directly indicating that a hearing is necessary when *pro hac vice* admission is *denied.* Similarly, appellants did not request a hearing on their motion at the time it was submitted to the trial court. The Eleventh District indicated in *Shaheen v. Meros* (Nov. 17, 1995), Lake App. No. 95-L-037, unreported, 1995 WL 803575, that in fact no authority could be found to support the proposition that a hearing was required prior to ruling on an initial *pro hac vice* request.

Based upon the foregoing analysis, while the trial court's decision as to the denial of *pro hac vice* admission to attorney Lewis is determined to be final and appealable, that portion of its entries addressing the admission of attorneys Hausfeld and Pawa is not appealable. Furthermore, there was ample support in the record for the trial court's decision denying admission to attorney Lewis, and thus there was no abuse of discretion. Accordingly, appellants' first assignment of error is dismissed for want of a final appealable order and appellant's second assignment of error is determined to lack merit.

For the foregoing reasons, the judgment of the trial court is hereby affirmed in its entirety.

*Judgment affirmed.*

Cox, P.J., and GENE DONOFRIO, J., concur.