WESTFALL, Appellee,

v.

CROSS et al., Appellants.

[Cite as *Westfall v. Cross* (2001), 144 Ohio App.3d 211.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 00–BA–5.

Decided June 13, 2001.

*Bordas, Bordas & Jividen, Linda M. Bordas* and *James B. Stoneking,* for appellee Della A. Westfall.

*Steptoe & Johnson* and *James C. Wright,* for appellant Attila A. Lenkey, M.D.

*Colombo & Stuhr, P.L.L.C.,* and *Richard Stuhr,* for defendants Gregory M. Saracco, M.D., and Thoracic & Cardiovascular Surgery, Inc.

*Colombo & Stuhr, P.L.L.C.,* and *William Davis,* for defendant Robert L. Cross, M.D.

WAITE, Judge.

This timely appeal arises out of the denial of *pro hac vice* status to attorney Kenneth Barton in a January 14, 2000 judgment entry issued by the Belmont

County Court of Common Pleas. Appellant maintains that the ruling of the trial court was final and appealable under R.C. 2505.02(B)(4) and that the court abused its discretion. We hold that an unqualified denial of *pro hac vice* status is a final and appealable order but that the trial court did not abuse its discretion in the instant case. The trial court decision is hereby affirmed.

The underlying litigation from which this appeal arises involves a medical negligence claim filed by appellee Della Westfall ("appellee"), seeking damages for the wrongful death of her late husband, James E. Westfall. On December 30, 1996, Robert Cross, M.D., and Gregory Saracco, M.D., performed emergency hernia and bowel surgery on decedent. On January 3, 1997, the two doctors performed additional surgery and discovered that decedent's bowel had been perforated. Dr. Lenkey ("appellant") was consulted to assist in the case on January 4, 1997. Decedent died in the evening of January 4, 1997.

Appellee filed her original complaint on January 24, 1997. Appellee filed an amended complaint on October 13, 1998, adding appellant as an additional defendant. Appellee alleged negligence in failing to timely assess, diagnose, ventilate, and treat decedent for signs of oxygen deprivation. Appellant secured the services of attorney James C. Wright of the law firm of Steptoe & Johnson in Wheeling, West Virginia. Attorney Wright remained as appellant's counsel through the extensive discovery phase of this case.

Trial was set for January 25, 2000. On January 13, 2000, appellant moved to admit Kenneth Barton, a West Virginia attorney, as his counsel *pro hac vice.* Attorney Barton's attached affidavit stated that he had a longstanding relationship with appellant and that appellant's insurer had requested Barton as lead counsel in the case.

On January 14, 2000, the trial court, after conducting an extensive hearing, denied *pro hac vice* status to attorney Barton. The court held that the three factors for evaluating a motion for *pro hac vice* described in *State v. Ross* (1973), 36 Ohio App.2d 185, 65 O.O.2d 316, 304 N.E.2d 396, were not present in the instant case. The court also stated that "[t]he exercise of such privilege is only accorded on a limited occasion brought about by an extraordinary set of circumstances." The court did allow additional counsel to assist in the case but only if they were licensed to practice in Ohio. Any additional counsel were prohibited from eliciting testimony, raising objections, or arguing the case. *Id.*

On January 21, 2000, appellant filed this appeal of the January 14, 2000 judgment entry.

Appellant's sole assignment of error states:

"The trial court abused its discretion by unreasonably denying the appellant's motion for *pro hac vice* admission of attorney Kenneth J. Barton, Jr., where all three of the *pro hac vice* admission factors support attorney Barton's admission."

A. *Final Appealable Order*

Initially, we must determine whether this matter is ripe for appeal. R.C. 2505.02(B)(4) provides:

"(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

" * * *

"(4) An order that grants or denies a provisional remedy and to which both of the following apply:

"(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

"(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."

This court recently held that a denial of a motion to admit counsel *pro hac vice* was final and appealable under R.C. 2505.02(B)(4). *Swearingen v. Waste Technologies Industries* (1999), 134 Ohio App.3d 702, 713–714, 731 N.E.2d 1229, 1236–1238. Appellee argues that this court should overturn *Swearingen* because the cases cited within *Swearingen* do not support the holding reached in that case. Appellee argues that if this court correctly applies the case law cited within *Swearingen*, we should dismiss the instant appeal for lack of a final appealable order.

*Swearingen* primarily relies on two cases to support its holding. The first is *Russell v. Mercy Hosp.* (1984), 15 Ohio St.3d 37, 15 OBR 136, 472 N.E.2d 695, which dealt with a motion to disqualify a plaintiff's lead Ohio attorney because a member of the attorney's law firm had a conflict of interest. The case had been pending for over six years when the conflict arose. *Id.* at 38, 15 OBR at 137, 472 N.E.2d at 696. The trial court granted the motion, and the Ohio Supreme Court held that the judgment was a final appealable order under former R.C. 2505.02. *Id.*

Appellee argues that the disqualification of a party's lead attorney after litigation has been pending for many years is qualitatively different from the denial of *pro hac vice* status to an attorney who has not been involved in a case at all and whose services are being requested on the eve of the trial itself. As we

will more fully analyze below, we do not find appellee's distinction significant in the context of determining whether the instant appeal is final and appealable.

The second case relied on in *Swearingen* is *In re Myers* (1995), 107 Ohio App.3d 489, 669 N.E.2d 53. *Myers* involved the denial of counsel *pro hac vice* arising out of an application to probate a will. *Id.* at 490, 669 N.E.2d at 53. Appellee argues that the *Myers* court actually held that the denial of *pro hac vice* status was *not* a final appealable order under former R.C. 2505.02. *Id.* at 496, 669 N.E.2d at 57. Appellee urges this court to adopt the holding of *Myers* as applied to the amended version of R.C. 2505.02.

Appellees' argument is not persuasive. The primary legal issue at stake in both *Russell* and *Myers* was whether a trial court decision denying a party the right to retain counsel of choice "affects a substantial right." One of the requirements of former R.C. 2505.02 in order to determine whether the matter was final and appealable was that the order must affect a substantial right. The comparable provision in amended R.C. 2505.02 states:

"(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

" * * *

"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

"Special proceeding" is defined in R.C. 2505.02(A)(2):

"(2) 'Special proceeding' means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity."

In R.C. 2505.02(A)(2), the Ohio legislature adopted the definition of "special proceeding" set forth in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 107, 616 N.E.2d 213, 217–218. See *State v. Saadey* (June 30, 2000), Columbiana App. No. 99CO49, unreported, 2000 WL 1114519. *Polikoff* instructed courts to resolve questions involving final appealable orders under former R.C. 2505.02 by first addressing the special proceeding prong of the statute, and then, if necessary, addressing whether a substantial right has been affected. *Polikoff, supra,* at 107, 616 N.E.2d at 217–218.

In determining whether a *pro hac vice* motion and hearing constitutes a special proceeding under R.C. 2505.02(A)(2), we must find both of the following: (1) it was specially created by statute and (2) prior to 1853 it was not denoted as an action at law or a suit in equity.

The right of an out-of-state attorney to appear as counsel in an Ohio court is not an absolute right, but, rather, is a matter within the discretion of the

trial court. *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 33, 27 OBR 447, 448–449, 501 N.E.2d 617, 619–620. The right to confer or revoke *pro hac vice* status is "part of the court's inherent power to regulate the practice before it and protect the integrity of its proceedings." *Id.* at 33–34, 27 OBR at 449, 501 N.E.2d at 620. Gov.Bar R. I(9)(H) acknowledges this inherent power by stating that the rules governing the admission to the practice of law in Ohio do "not apply to participation by an attorney not yet admitted to practice in Ohio in a cause being litigated in the State when such participation is with leave of the judge hearing such case." The right to appear as counsel *pro hac vice* is conferred by the common law and not by statute. Therefore, *pro hac vice* proceedings are not special proceedings as defined by R.C. 2505.02(A)(2), and any order resulting from those proceedings cannot be a final order under R.C. 2505.02(B)(2). There is, thus, no need to resolve whether the order affects a substantial right under that same section.

Appellee's insistence that we apply the *Myers* analysis regarding whether the denial of *pro hac vice* status affects a substantial right and that we distinguish *Russell* based on the same analysis is moot, because no matter which way we might resolve the issue, the January 14, 2000 entry is not a final appealable order under R.C. 2505.02(B)(2). The "substantial right" analysis is only potentially relevant under R.C. 2505.02(B)(2), and we have already determined that, for other reasons, the instant appeal is not final and appealable under that section. We must therefore turn to other portions of R.C. 2505.02, as we did in *Swearingen*, to determine whether the order at hand may be a final appealable order.

For an order to be considered final under R.C. 2505.02(B)(4), the order must satisfy three requirements: (1) it must grant or deny a provisional remedy; (2) it must conclusively determine the action with respect to the provisional remedy; and (3) the effect of the order, if not immediately appealable, would be to deny the appealing party any meaningful or effective remedy on later appeal. *Chambers v. Chambers* (2001), 137 Ohio App.3d 355, 359, 738 N.E.2d 834, 837–838. Our analysis under this section of the statute does not involve a determination whether the denial of counsel *pro hac vice* affects a substantial right.

The term "provisional remedy" is defined in R.C. 2505.02(A)(3):

"(3) 'Provisional remedy' means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, or suppression of evidence."

The definition contains a nonexhaustive list of provisional remedies. The key factor is whether the proceeding is ancillary to the underlying action. The issues involved in determining a *pro hac vice* motion are by and large tangential to those involved in the underlying case. A *pro hac vice* hearing primarily concerns the prior relationship of the motioning party and the attorney and the availability of

other competent Ohio counsel. *State v. Ross* (1973), 36 Ohio App.2d 185, 197, 65 O.O.2d 316, 323, 304 N.E.2d 396, 404. A *pro hac vice* determination thereby satisfies the first prong of the test as being ancillary to the main action.

The second requirement of R.C. 2505.02(B)(4) has also been met because the January 14, 2000 judgment entry unqualifiedly denied appellant the right to be represented by attorney Barton in the instant litigation. The unconditional nature of the judgment entry, and the ensuing result that appellant would have continued on to trial without the aid of his chosen counsel, effectively ended the *pro hac vice* proceeding with respect to attorney Barton.

■ We must at this point clarify that not every order determining a *pro hac vice* request will satisfy the requirements of R.C. 2505.02(B)(4)(a). To qualify as a final order under that section, the order must terminate the *pro hac vice* proceeding *and* prevent a judgment in the movant's favor. Therefore, a limited grant of *pro hac vice* status, even with severe restrictions placed on the conduct of the out-of-state attorney, is partially in the movant's favor and may not satisfy the requirements of R.C. 2505.02(B)(4)(a). *Swearingen, supra,* at 710–711, 731 N.E.2d at 1234–1235.

■ Based on the foregoing, we have determined that this matter meets the first two requirements of the statute, as amended. The third requirement of R.C. 2505.02(B)(4) is that the party moving for *pro hac vice* counsel would not be afforded a meaningful remedy on appeal following the conclusion of the underlying action. "In determining whether a remedy is meaningful or effective, a court must consider the impracticability and detrimental effect of a delayed review of the provisional remedy. The delay essentially must deprive the appellant of a remedy." *Chambers, supra,* at 359, 738 N.E.2d at 838.

As we have previously held in *Swearingen,* an order unqualifiedly denying *pro hac vice* status cannot be effectively reviewed after final judgment. This is because the appealing party would have to prove to the court of appeals that an attorney who did not appear in the case would have done a better job or achieved a different result than the retained counsel. *Swearingen, supra,* at 713–714, 731 N.E.2d at 1236–1238.

" 'A court would have a most difficult time attempting to determine by any objective test whether that lawyer's particular skills would have caused a jury to award greater damages than it returned after listening to a different attorney whom the client did not originally wish to retain.' Any argument on appeal would depend largely on speculation and hindsight." *Id.* at 713, 731 N.E.2d at 1236–1237, citing *Russell, supra,* at 40, 15 OBR at 138–139, 472 N.E.2d at 697–698.

Ohio courts have consistently held that the granting of a motion to disqualify an attorney, whether licensed in Ohio or admitted *pro hac vice,* is not effectively

reviewable on appeal at the termination of the primary litigation. *Russell, supra,* at 40, 15 OBR at 138–139, 472 N.E.2d at 697–698; *State ex rel. Kura v. Sheward* (1992), 75 Ohio App.3d 244, 246, 598 N.E.2d 1340, 1341–1342; *State ex rel. Corn v. Russo* (1999), 133 Ohio App.3d 57, 64, 726 N.E.2d 1052, 1057; *State ex rel. Keenan v. Calabrese* (1994), 69 Ohio St.3d 176, 178, 631 N.E.2d 119, 121; *Guccione v. Hustler Magazine, Inc.* (1985), 17 Ohio St.3d 88, 89, 17 OBR 211, 211–212, 477 N.E.2d 630, 631. Appellee would have us disregard the analysis of *Russell* and the other cases cited above because they involved the disqualification of an attorney in the midst of litigation rather than the denial of an initial attempt to obtain representation *pro hac vice.* We find the *Russell* analysis equally applicable to the denial of *pro hac vice* status. It would be more difficult for a party to prove the prejudicial effect of never having access to his or her desired attorney than it would be to prove the harm of an attorney's disqualification during trial.

Where a court disqualifies an attorney during the middle of litigation, the record might show some effect that the attorney had on subsequent events. In the case of a denial of counsel *pro hac vice,* there will be nothing in the record, outside of the hearing on the *pro hac vice* motion itself, which could indicate a prejudicial effect on the outcome of the trial. Therefore, we find the *Russell* analysis concerning the unlikelihood of proving prejudice in a delayed appeal of the denial of a motion to disqualify to be applicable to the denial of a motion to admit counsel *pro hac vice.*

■ Without the ability to show prejudicial effect at the conclusion of trial, a reviewing court would be required to ignore as harmless any error in the denial of a motion to admit counsel *pro hac vice.* Civ.R. 61. Therefore, a party appealing the denial of the motion would not be afforded a meaningful or effective remedy on appeal and the third prong of R.C. 2505.02(B)(4) has been met. Appellant's assignment of error has merit and we hold that the January 14, 2000 judgment entry is final and appealable.

B. *Review on the Merits*

■ Moving from the procedural aspect of this matter to the substantive, appellant argues that the trial court was required to use the three-factor test set forth in *State v. Ross* (1973), 36 Ohio App.2d 185, 65 O.O.2d 316, 304 N.E.2d 396, in its determination of his *pro hac vice* motion. *Ross* enumerated three *nonexclusive* factors for courts to use in evaluating *pro hac vice* motions:

"(1) Did there exist a long-standing close personal relationship between the party and the out-of-state counsel? (2) Is the out-of-state counsel the customary counsel for the party in jurisdictions where such out-of-state counsel is admitted to practice? and (3) What is the situation with respect to the availability of

counsel admitted to practice in Ohio who are competent to represent the party in the case?" *Id.* at 197, 65 O.O.2d at 323, 304 N.E.2d at 404.

Appellant argues that he presented evidence that attorney Barton had a longstanding relationship with appellant, that Barton was appellant's customary counsel in West Virginia, and that Barton had extensive experience in medical malpractice cases. Appellant also raised the fact that his current lead attorney had never tried a similar case.

Appellant claims that the trial court promulgated a new legal standard incompatible with the *Ross* standard, namely, that a *pro hac vice* movant must show an extraordinary set of circumstances before the motion would be sustained. Appellant argues that the trial court must ground its decision in sound reasoning for the trial court's order to satisfy the abuse-of-discretion standard, citing *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601. Appellant contends that the "extraordinary circumstances" test does not constitute a sound reasoning process.

The actual holding of *AAAA Enterprises* is that a "decision is unreasonable if there is *no* sound reasoning process that would support that decision." (Emphasis added.) *Id.* This is another way of stating the rule that a reviewing court will not reverse a judgment because of an erroneous rationale if the judgment is legally correct for other reasons. *Buoscio v. Bagley* (2001), 91 Ohio St.3d 134, 135, 742 N.E.2d 652, 653.

Attorneys admitted in other states, but not in Ohio, may seek permission from the court to appear *pro hac vice.* Gov.Bar. R. I(9)(H). Out-of-state attorneys have no absolute right under state or federal law to practice in Ohio. *Leis v. Flynt* (1979), 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717. The power of a court to grant *pro hac vice* status is part of the court's inherent power to regulate the practice before it and to protect the integrity of its proceedings. *Royal Indemn. Co. v. J.C. Penney Co., supra,* 27 Ohio St.3d at 33–34, 27 OBR at 448–450, 501 N.E.2d at 619–620.

The standard of review of an order denying *pro hac vice* status is whether an abuse of discretion has occurred. *Id.* at 33, 27 OBR at 448–449, 501 N.E.2d at 619–620. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880–881.

Appellant's reliance on *Ross* as a reason to reverse the decision of the trial court is misplaced. *Ross* itself does not state that there are *only* three factors involved in evaluating a *pro hac vice* motion. The factors in *Ross* were listed as nonexclusive factors. *Id.* at 197, 65 O.O.2d at 323–324, 304 N.E.2d at 404–405. It

is also evident that appellant did not provide evidence as to the third *Ross* factor, namely, whether there were other competent Ohio attorneys available to represent him.

Additionally, the trial court may not have believed appellant's evidence relating to the first and second *Ross* factors. The weight to be given evidence and the credibility of witnesses are primarily for the trier of fact to determine. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178, 180.

In *Swearingen*, this court did apply the *Ross* factors in reviewing a *pro hac vice* order, but the parties had already agreed amongst themselves that *Ross* would be authoritive. *Swearingen, supra,* at 715, 731 N.E.2d at 1238. We adopt the *Ross* factors in analyzing the instant case as well, keeping in mind, however, that these factors are nonexclusive.

In reviewing the record, we note that the facts and holding of *Swearingen* appear to be on all fours with the instant appeal. In *Swearingen*, the case had been pending over one year before the *pro hac vice* motion was filed. The appellant had been represented by Ohio counsel in all phases of the litigation prior to filing the motion. The nature of the litigation was complex. Although there was some evidence that the movant in *Swearingen* had a long-term relationship with the out-of-state attorney, the trial court discounted that evidence. We held that it was reasonable for the trial court to find that it would be a burden on both the defendants and the court to admit a new attorney at such a late date in the proceedings. *Id.* at 717, 731 N.E.2d at 1239–1240. We also held that there was no evidence that the movants would be prejudiced by the denial of their motion, because they were already represented by competent Ohio counsel. *Id.*

In the instant case, the January 14, 2000 judgment entry allowed appellant to secure other Ohio counsel and placed some restrictions on the ability of additional counsel to assist during trial. The order did not prohibit appellant from securing the services of out-of-state counsel in an advisory or of-counsel capacity. It is also unclear whether appellant actually requested attorney Barton's assistance, or if appellant's insurance carrier was the impetus for the *pro hac vice* motion. Attorney Barton's affidavit, which was attached to the *pro hac vice* motion, states that Barton was asked by St. Paul Fire & Marine Ins. Co. to represent only appellant. Finally, the record reflects that the matter had been pending for approximately a year and a half before the motion was filed.

Although the trial court stated in its order that appellant needed to show extraordinary circumstances, the order also stated that the three *Ross* factors were not satisfied. We agree with the trial court that the *Ross* factors were not met. We need not decide whether the "extraordinary circumstances" test would

violate the abuse-of-discretion standard, because the trial court also overruled appellant's motion under the *Ross* analysis. There was at least one sound basis for the trial court decision, thereby satisfying our review of the decision under an abuse-of-discretion standard. *AAAA Enterprises, supra,* at 161, 553 N.E.2d at 601.

The trial court was within its discretion to deny *pro hac vice* status to attorney Barton based on the factors set forth in *Ross* and *Swearingen.* Appellant's assignment of error is therefore without merit and the January 14, 2000 judgment entry is affirmed.

*Judgment affirmed.*

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.