[Cite as *State v. Powell*, 2019-Ohio-4286.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals Nos. L-18-1194
                                                                    L-18-1195
            Appellee

                                                 Trial Court No. CR0200603581
v.

Wayne Powell                                     **DECISION AND JUDGMENT**

            Appellant                            Decided: October 18, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, Bethany L. O'Neill and
Erika M. LaHote, Assistant Public Defenders, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} In this consolidated appeal, defendant-appellant, Wayne Powell, appeals two

separate orders of the Lucas County Court of Common Pleas, dated August 16, 2018.

The trial court denied Powell's motion for funds to hire experts in support of his amended

postconviction petition, and denied his motion for a new mitigation trial. For the reasons

that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On November 22, 2006, Powell was indicted on one count of aggravated arson, ten counts of aggravated murder, and 26 capital specifications. The charges arose out of an arson fire at a two-story house in Toledo, Ohio, that killed four people.

{¶ 3} Before the trial, Powell requested and received funding for various experts. Specifically, the trial court authorized the payment of $1,000 for a fire investigator; $2,500 for private investigators; $2,500 for a psychologist; $2,000 for an audio expert; and $2,500 for a mitigation specialist from the Ohio Public Defender's office. In each of these orders, the trial court stated that defense counsel could petition the court "if further funds become necessary."

{¶ 4} The trial began on August 10, 2007. Eleven days later, the jury returned a verdict finding Powell guilty of all charges, including the 26 specifications listed in the indictment. The court merged the ten aggravated murder counts into four counts—one for each victim—with each of their specifications in tandem.

{¶ 5} The court proceeded to the sentencing/mitigation phase on August 22, 2007. Powell waived his right to a presentence investigation and report, his right to have the court perform a psychological investigation, and his right to make a statement on his own behalf. Although Powell presented several witnesses in mitigation, including Powell's family members, a juvenile probation officer, and a psychologist, the jury unanimously found that the aggravating circumstances proven at trial (referred to as specifications in the indictment) outweighed the mitigating factors presented during the sentencing phase.

2.

As a result, the jury recommended a death sentence for each of the four aggravated murder convictions.

{¶ 6} After receiving this recommendation from the jury, the trial court also found beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors. The court stated these findings in its death penalty order on September 13, 2007, followed by a judgment entry on September 26, 2007, sentencing Powell to death.

{¶ 7} Powell filed a direct appeal with the Supreme Court of Ohio in November 2007. On June 30, 2008, he filed a petition for postconviction relief, and on July 14, 2008, he filed a motion for funds to hire a substance-abuse expert in support of his postconviction petition. The postconviction petition and corresponding motion for expert funds were held in abeyance until the Supreme Court of Ohio decided his direct appeal. On June 13, 2012, the Supreme Court affirmed Powell's convictions and death sentences. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865.

{¶ 8} On October 13, 2016, with leave of court, Powell filed an amended petition for postconviction relief, in which he asserts 39 separate claims for relief. In his amended petition, Powell claims, among other things, that his postconviction investigation has revealed that the state's evidence of arson was scientifically flawed, alternate suspects existed and should have been investigated, and his defense counsel failed to present all mitigating factors pertinent to his case.

{¶ 9} That same day, Powell filed a motion for leave to conduct discovery and an amended motion for funds to hire experts in support of his amended petition. In his

3.

motion for discovery, Powell sought leave to serve various subpoenas duces tecum, stating that "[m]odern fire science methodology and the scientific method demonstrate that Powell's verdict and death sentence were premised on unreliable and unchallenged fire evidence purporting to be based in science but which we now know is scientifically invalid."

{¶ 10} In his amended motion for expert funds, Powell requested funds to hire a substance-abuse expert, a psychologist, a neuropsychologist, and a mitigation investigator. The motion asserts that "Powell's counsel were ineffective for failing to request funding for and obtaining expert assistance regarding Powell's substance abuse and the neuropsychological effect it had on Powell." Powell also argued that, because the trial court had found him to be indigent at the time of trial, he had a right to court-appropriated funding to retain experts on this issue and "such expert assistance was necessary and available at the time of Powell's capital trial."

{¶ 11} The state filed a response to the amended motion for funds on December 12, 2016. The state argued that Powell did not have a right to expert assistance in his postconviction proceedings, and that the anticipated subject matter of the experts' testimony was barred by res judicata.

{¶ 12} On January 12, 2017, Powell filed a motion for leave to file a motion for a new mitigation trial pursuant to Crim.R. 33 and *Hurst v. Florida*, ___ U.S. ___, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016). Powell argued that he was sentenced to death under a statutory scheme that, pursuant to the subsequent pronouncement of the Supreme Court

4.

of the United States in *Hurst*, violates the Sixth and Fourteenth Amendments to the U.S. Constitution.

{¶ 13} On November 29, 2017, Powell filed supplemental memoranda relating to his motion for discovery and his motion for funds to hire experts. Through this filing, Powell notified the court of two recent developments. First, R.C. 2953.21 was amended to allow a petitioner to seek leave of court to conduct discovery in a postconviction review of a capital case. Second, Crim.R. 42 was enacted and includes a provision that authorizes trial courts to appoint experts for indigent defendants in capital postconviction proceedings.

{¶ 14} On August 16, 2018, the trial court decided Powell's outstanding motions. The trial court granted Powell's motion for leave to file a motion for a new mitigation trial—finding that the motion for new mitigation trial was filed within a reasonable time after *Hurst* was decided—but it denied the motion on its merits, concluding that *Hurst* does not render Ohio's death penalty statutes unconstitutional.

{¶ 15} The trial court also denied Powell's motion for funds to hire experts, finding that Powell "fail[ed] to make a showing that he is entitled to funds for experts which is outside the contemplation of Ohio's post-conviction statutes. For this reason, in addition to those noted by the State in its opposition, Defendant's motion for funds is not well-taken and denied."

{¶ 16} The trial court reserved judgment on Powell's motion to conduct discovery, and asked for additional briefing relating to the recent amendments to R.C.

5.

2953.21(A)(1)(d) that now permit discovery in postconviction reviews of capital cases "for good cause shown."

{¶ 17} Powell then appealed the trial court's denial of his motion for expert funds and motion for new mitigation trial. Powell's amended petition for postconviction relief, and motion to conduct discovery, remain pending in the trial court.

## II. Law and Analysis

{¶ 18} On appeal, Powell claims two assignments of error:

Assignment of Error No. I. The trial court erred when it denied Powell's motion for funds to hire experts.

Assignment of Error No. II. The trial court erred when it denied Powell's motion for a new mitigation trial.

{¶ 19} In his first assignment of error, Powell claims that the trial court abused its discretion when it denied his amended motion for funds to hire experts in support of his amended postconviction petition. Powell argues that the trial court improperly denied the motion—without making any factual findings related to its merits—under the mistaken belief that indigent defendants in capital cases are not entitled to court-appointed experts in postconviction proceedings under Ohio law. Powell claims that the trial court overlooked the July 1, 2017 amendments to Crim.R. 42, which recognize the authority of trial courts to appoint experts for indigent defendants in postconviction reviews of a

capital case.[1]  Specifically, Crim.R. 42(E)(1) now provides that "[t]he trial court is the appropriate authority for the appointment of experts for indigent defendants in all capital cases *and in post-conviction review of a capital case*."  (Emphasis added.)  Powell also argues that he has a "particularly great" need for expert funding to assist with his postconviction petition because "[t]he effects of multi-generational substance abuse should have been thoroughly investigated and presented by a substance abuse expert at trial but, due to counsel's failures, it was not."

{¶ 20} In response, the state argues that we lack jurisdiction to consider this assignment of error because the trial court's order is not a "final order" under R.C. 2505.02.  In the alternative, the state argues that the trial court properly denied Powell's motion because any issues relating to substance abuse are barred by res judicata and, even if not barred, Powell did not provide any specifics regarding the identity, cost, and qualifications of his proposed experts and "'[a]bsent these specifics there is no abuse of discretion to deny a defendant expert assistance.' [*State v.*] *Wolf*, [71 Ohio App.3d 740, 748, 595 N.E.2d 405 (11th Dist.1991)]."

---

[1] Powell's postconviction proceeding was already pending at the time that the amendments to Crim.R. 42 took effect on July 1, 2017.  These amendments "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."  Crim.R. 59(EE).  The state does not offer any reason why the application of these amendments to this proceeding would "not be feasible or would work injustice," nor do we see any reason why this exception should apply in this case.

7.

**{¶ 21}** In his reply brief, Powell argues that the trial court's order is a "final order" under R.C. 2505.02(B) and, regardless, the state "effectively ignores" the specific language of Crim.R. 42(E)(4), which states that "[t]he appeal of an order regarding appointment of experts shall be governed by App.R. 11.1," and App.R. 11.1, which states that "[i]n all capital cases, as defined in Crim.R. 42, the appeal of an order regarding appointment of experts shall * * * be handled pursuant to an accelerated calendar under this rule and local rules adopting an accelerated calendar." Powell claims that even if the order is not "final" under R.C. 2505.02(B), this court has jurisdiction to review the order under Crim.R. 42(E) and App.R. 11.1. Powell argues that because "[t]he General Assembly did not strike the new rules"—which were promulgated by the Supreme Court of Ohio pursuant to its constitutional rulemaking authority under Article IV, Section 5(B) of the Ohio Constitution—the General Assembly thereby implicitly conferred jurisdiction to the courts of appeals via its failure to adopt a concurrent resolution of disapproval before the amendments to Crim.R. 42 and App.R. 11.1 took effect.

**{¶ 22}** As a threshold matter, we first determine whether we have jurisdiction to review the trial court's order denying Powell's motion for expert funds.

**A. Our Jurisdiction is Limited to Review of "Judgments or Final Orders"**

**{¶ 23}** The jurisdiction of this court is governed by Article IV, Section 3(B)(2) of the Ohio Constitution, which provides that "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse *judgments or final orders* of the courts of record inferior to the court of appeals within the

8.

district * * *." (Emphasis added.) The issue here is whether the trial court's order denying Powell's motion for expert funding was a "final order."

{¶ 24} While Powell argues the trial court's order is a "final order" under Crim.R. 42 and App.R. 11.1 because those procedural rules explicitly state that a defendant may "appeal * * * an order regarding appointment of experts" in a postconviction review of a capital case, a procedural rule cannot create jurisdiction that would be lacking under R.C. 2505.02, which defines "final order." That is because R.C. 2505.02 is a jurisdictional statute, and "'[i]f the statute is jurisdictional, it is a substantive law of this state * * *.'" *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 18, quoting *Akron v. Gay*, 47 Ohio St.2d 164, 165-166, 351 N.E.2d 475 (1976). As such, the rights created by R.C. 2505.02—i.e., the jurisdictional right to appellate review of "final orders" as defined by that statute—are "substantive rights" that, pursuant to Section 5(B) of Article IV of the Ohio Constitution, cannot be abridged, enlarged, or modified by any procedural rules. *See Proctor* at *¶* 18, quoting *Gay* at 165-166 ("'If the statute is jurisdictional, it is a substantive law of this state, and cannot be abridged, enlarged, or modified by the Ohio Rules of Civil Procedure.'").

{¶ 25} Thus, to determine whether the trial court's order is a "final order" subject to immediate appellate review, we must look to the definition of "final order" provided by the legislature in R.C. 2505.02(B), which states, in relevant part:

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

* * *

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.[2]

---

[2] "Final orders" also include orders that vacate or set aside a judgment, or grant a new trial (R.C. 2505.02(B)(3)); orders that determine whether an action may or may not be maintained as a class action (R.C. 2505.02(B)(5)); orders that determine the constitutionality of certain specifically-identified amendments to the Ohio Revised Code (R.C. 2505.02(B)(6)); and orders in an appropriation proceeding that may be appealed pursuant to R.C. 163.09(B)(3) (R.C. 2505.02(B)(7)). We, however, do not analyze these provisions of R.C. 2505.02(B) because, on their face, none of them apply to the trial court order at issue.

10.

### 1. The Order is not a "Final Order" Under R.C. 2505.02(B)(1) or (2)

{¶ 26} Regarding R.C. 2505.02(B)(1) and (2), Powell argues that under the amendments to Crim.R. 42, indigent defendants now have a "substantial right" to expert funding in postconviction reviews of capital cases. As support, Powell points to Crim.R. 42(E)(1), which states that a trial court has the "authority" to appoint experts for indigent defendants in postconviction reviews of capital cases; Crim.R. 42(E)(2), which provides certain procedural mechanics that the court must follow when an indigent defendant requests expert funding in such cases; and Crim.R. 42(E)(3), which states that "the trial court *shall* decide the issue of appointment of experts" and other related issues, and "*shall* make written findings as to the basis of any denial." (Emphasis added.)

{¶ 27} Before we analyze this issue, we briefly note—because the terminology is confusingly similar—that a "substantial right" under R.C. 2505.02 is not necessarily a "substantive right" under Section 5(B) of Article IV of the Ohio Constitution. A "substantial right" is defined by R.C. 2505.02(A)(1) as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, *or a rule of procedure entitles a person to enforce or protect*." (Emphasis added.) *See also Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989). In other words, a "substantial right" under R.C. 2505.02 is merely a legal right that may be enforced or protected by law—including, but not limited to, a right created by "a rule of procedure." On the other hand, a "substantive right" under Article IV, Section 5(B) of the Ohio Constitution "'refers to common law, statutory and constitutionally recognized rights.'"

*Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 16, quoting *Krause v. State*, 31 Ohio St.2d 132, 285 N.E.2d 736 (1972), *overruled on other grounds by Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 426 N.E.2d 784 (1981). Thus, while a procedural rule can create "substantial rights" as defined by R.C. 2505.02, a procedural "substantial right" cannot abridge, enlarge, or modify a "substantive right" under Article IV, Section 5(B) of the Ohio Constitution.

{¶ 28} Here, the relevant issue is whether the trial court's order denying expert funding to Powell in his postconviction proceeding affected a "substantial right" under R.C. 2505.02. In postconviction relief proceedings, which are governed by statute, the postconviction relief issues generally arise after the "substantial rights" of a defendant have been determined, and are not final, appealable orders without statutory language designating them as final. *State v. Carter*, 8th Dist. Cuyahoga No. 106690, 2018-Ohio-4115, ¶ 14, citing *State v. Cunningham*, 8th Dist. Cuyahoga No. 85342, 2005-Ohio-3840, ¶ 10. R.C. 2953.23(B) provides that an order granting or denying a petition for postconviction relief brought pursuant to R.C. 2953.21 is a final, appealable order. R.C. 2953.23(B) ("An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code."). There is no specific language in the statute addressing interlocutory appeals in postconviction relief proceedings.

{¶ 29} Powell argues, however, that the recent amendments to Crim.R. 42 give indigent defendants a "substantial right" to expert funding in postconviction reviews of

12.

capital cases.  In response, the state argues that "[a]t best, Crim.R. 42 confers a right to have the trial court consider a request for funding * * *."  We agree with the state.  An indigent defendant does not have a "substantial right" *to receive* expert funding in postconviction reviews of capital cases under Crim.R. 42(E).  Under the plain language of this rule, a trial court is merely required to grant—or deny—an indigent defendant's request for expert funding in such cases pursuant to the specific directives of those provisions.  The rule does not create a "substantial right" to expert funding.

{¶ 30} But, an indigent defendant does have a *procedural* "substantial right" under Crim.R. 42(E) to have the trial court follow the process that is outlined in that rule when considering a request for expert funding in a postconviction review of a capital case.  *See* R.C. 2505.02(A)(1) (a "substantial right" includes "a right that * * * a rule of procedure entitles a person to enforce or protect.").  That is, under Crim.R. 42(E)(3),

> Upon establishing counsels' respective compliance with discovery obligations, the trial court *shall* decide the issue of appointment of experts, including projected expert fees, the amount of time to be applied to the case, and incremental fees as the case progresses.  The trial court *shall* make written findings as to the basis of any denial.  (Emphasis added.)

{¶ 31} Thus, after the trial court establishes that the parties have complied with their respective discovery obligations,[3] it must "decide the issue of appointment of

---

[3] Under Crim.R. 42(C), "the prosecuting attorney and the defense attorney shall, upon request, be given full and complete access to all documents, statements, writings,

13.

experts" (including various subordinate issues if the funding request is granted) and, if the request is denied, "make written findings as to the basis of any denial." Crim.R. 42(E)(3).

{¶ 32} Although Powell's arguments focus almost exclusively on why he believes the trial court erred by denying his request for funding, Powell also argues that the trial court failed to follow Crim.R. 42(E)'s *procedural* mandate to "make written findings as to the basis of any denial." That is, in his appellate brief, Powell claims that the "trial court's unexplained denial of Powell's funding request * * * constitutes a violation of Powell's due process guarantees." We disagree. Although succinct, the trial court explained its basis for denying Powell's request for expert funding:

> Put simply, Defendant fails to make a showing that he is entitled to funds for experts which is outside the contemplation of Ohio's post-convictions statutes. For this reason, in addition to those noted by the State

photographs, recordings, evidence, reports, or any other file material in possession of the state related to the case * * *" except materials not subject to disclosure pursuant to Crim.R. 16(J). Powell does not argue the trial court failed to "establish" the state's compliance with its Crim.R. 42(C) "discovery obligation" before ruling on his motion for expert funding as required by Crim.R. 42(E)(3). Moreover, for the sake of clarity, we note that Powell's motion for leave to conduct discovery—which remains pending in the trial court—seeks permission to conduct discovery under R.C. 2953.21(A)(1)(d), which requires a showing of "good cause." In addition, Powell's pending discovery motion seeks information relating to postconviction claims that pertain to the guilt phase of the trial, whereas his motion for expert funding seeks assistance with postconviction claims that pertain to mitigation issues. The pending discovery motion is therefore unrelated to the motion for expert funding.

14.

in its opposition, Defendant's motion for funds is not well-taken and denied.

{¶ 33} Given that the trial court complied with Crim.R. 42(E) by making "written findings as to the basis of [its] denial," the trial court's order did not "affect a substantial right" under R.C. 2505.02(B)(1) or (2) and we need not address the remaining elements of a "final order" under those two provisions.

## 2. The Order is a "Final Order" Under R.C. 2505.02(B)(4)

{¶ 34} Under R.C. 2505.02(B)(4), an order is a "final order" if it "satisfies each part of a three-part test * * *." *State v. Muncie*, 91 Ohio St.3d 440, 446, 746 N.E.2d 1092 (2001). That is, (1) the order must grant or deny a "provisional remedy"; (2) the order must determine the action with respect to the "provisional remedy" and prevent judgment in favor of the appealing party with respect to the "provisional remedy"; and (3) the appealing party "would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4).

### a. The Order Denies a Provisional Remedy

{¶ 35} Although somewhat counterintuitive, "[t]he General Assembly expressly defined a 'provisional remedy' as a type of *proceeding.* R.C. 2505.02(A)(3). An 'order' is thus properly understood as the mandate from the trial court that grants or denies the particular relief at issue in that proceeding—not as the provisional remedy itself." (Emphasis sic.) *Muncie* at 447-448. That is, "provisional remedy" is defined as

a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code.

R.C. 2505.02(A)(3).

{¶ 36} By its express terms, this list is "'illustrative and not exhaustive.'" *Muncie* at 448, quoting *Boedeker v. Rogers*, 140 Ohio App.3d 11, 18, 746 N.E.2d 625 (8th Dist.2000). Although the legislature did not define "a proceeding ancillary to an action" in R.C. 2505.02, the Supreme Court of Ohio has defined "ancillary proceeding" as "'one that is attendant upon or aids another proceeding.'" *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 20, quoting *Muncie* at 449. "Attendant" means "something that accompanies." *In re R.R.*, 2017-Ohio-8928, 88 N.E.3d 969, ¶ 27 (4th Dist.), quoting https://www.merriam-webster.com/dictionary/attendant. *See also Black's Law Dictionary* 153 (10th Ed.2014) (defining "attendant" as "Accompanying; resulting <attendant circumstances>.")

{¶ 37} In this case, we find that the procedure for the appointment of experts for indigent defendants, as outlined in Crim.R. 42(E), is an "ancillary proceeding"—and, therefore, a "provisional remedy"—because it is "attendant upon" and "aids" the principal action (i.e., a postconviction review of a capital case). Absent this ancillary

proceeding for the appointment of experts in postconviction reviews of capital cases, an indigent defendant would not have the opportunity to develop his postconviction petition with evidence dehors the record to the same extent that a non-indigent defendant would.

{¶ 38} Accordingly, because the trial court's order denies relief in an ancillary proceeding, it satisfies the first prong of R.C. 2505.02(B)(4).

**b. The Order Determines the Action with Respect to the Provisional Remedy**

{¶ 39} The trial court's order denying appellant's motion for funding for experts unquestionably determines the action with respect to the provisional remedy itself (i.e., Powell's request for expert funding) and prevents a judgment in favor of the appellant on this issue. The trial court's order therefore satisfies the second step of the R.C. 2505.02(B)(4) analysis because "'there was no further opportunity to petition the court for the remedy being sought * * *,'" *Muncie*, 91 Ohio St.3d at 451, 746 N.E.2d 1092, quoting *Swearingen v. Waste Technologies Industries*, 134 Ohio App.3d 702, 713, 731 N.E.2d 1229 (7th Dist.1999), and "there existed nothing further for the trial court to decide with respect to the provisional remedy." *In re Special Docket No. 73958*, 115 Ohio St.3d 425, 2007-Ohio-5268, 875 N.E.2d 596, ¶ 29.

**c. Powell cannot Obtain a Meaningful and Effective
Remedy through the Appeal of the Final Judgment**

{¶ 40} In determining whether an appeal after final judgment would afford a meaningful or effective remedy, we must consider "whether there is a harm such that appeal after final judgment would not rectify the damage." (Internal quotations omitted.)

*In re D.H.*, 152 Ohio St.3d 310, 2018-Ohio-17, 95 N.E.3d 389, ¶ 18.  In other words, "'[t]he proverbial bell cannot be unrung * * *.'"  *Muncie* at 451, quoting *Gibson-Myers & Assocs., Inc. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999).

{¶ 41} The Supreme Court of Ohio has recognized, however, that the final prong of R.C. 2505.02(B)(4) "allows for appeals when the need for immediate review outweighs the substantial interest in avoiding piecemeal litigation."  *In re Grand Jury Proceeding of John Doe*, 150 Ohio St.3d 398, 2016-Ohio-8001, 82 N.E.3d 1115, ¶ 22. Thus, when determining whether an appellant will be able to obtain meaningful and effective remedy through the appeal of the final judgment, "[t]he possibility of delayed justice must be balanced against the principles of judicial economy."  *Guerriero v. Dept. of Rehab. & Corr.*, 11th Dist. Ashtabula No. 2001-A-0062, 2002-Ohio-5149, ¶ 34 (Ford, J., dissenting).  In most circumstances, "[t]he passage of time will not render a future appeal ineffective."  *Thomasson v. Thomasson*, 153 Ohio St.3d 398, 2018-Ohio-2417, 106 N.E.3d 1239, ¶ 74 (DeWine, J., dissenting), citing *In re D.H.* at ¶ 19.

{¶ 42} In *Thomasson*, the court analyzed whether an order appointing a guardian ad litem ("GAL") to act on behalf of an adult, who had not been found incompetent, during a divorce proceeding, was a final, appealable order.[4]  The court determined that

---

[4] Although *Thomasson* analyzed the issue with respect to whether "immediate review" was required under R.C. 2505.02(B)(2), that analysis is virtually identical to the analysis required under R.C. 2505.02(B)(4)(b).

18.

the divorce proceedings were statutory in nature and the trial court failed to make the appropriate findings under Civ.R. 17, which requires that "[w]hen a minor or incompetent person is not otherwise represented in an action the court shall appoint a guardian ad litem or shall make such other order as it deems proper for the protection of such minor or incompetent person." *Thomasson* at ¶ 9, 12. Therefore, the order violated the adult's due process rights because it "was not preceded by an adjudication of incompetency, prior notice, and any opportunity to be heard on the issue." *Id.* at ¶ 21.

{¶ 43} As for the need for immediate review, the *Thomasson* court stated, "there are occasions on which *judicial economy* tips the balance in favor of immediate review." (Emphasis added.) *Id.* at ¶ 33, citing *Russell v. Mercy Hosp.*, 15 Ohio St.3d 37, 42, 472 N.E.2d 695 (1984). Specifically, the court found that "[r]equiring [the adult] to wait to appeal until after the divorce proceedings have concluded would require the appellate court to construct a hypothetical proceeding to determine prejudice based on speculation as to how [the adult's] decisions might have differed from the decisions made by the GAL." *Id.* Therefore, the court made a very "narrow and limited holding" that "a trial court's order appointing a GAL to represent an adult in a divorce case is a final, appealable order when that adult has not been adjudicated incompetent subsequent to providing the parties with notice and an opportunity to be heard on the issue of the adult's competency." *Id.* at ¶ 34.

{¶ 44} For most postconviction relief petitions, the length of time to wait for a final adjudication on the merits of the petition, and the time for an appellate court to

review the trial court's decision, would not be enough for a finding that "*judicial economy* tips the balance in favor of immediate review." However, when a petition for postconviction relief is filed pursuant to R.C. 2953.21(A), "only the supreme court may stay execution of the sentence of death." R.C. 2953.21(I). Neither the trial courts nor the appellate courts can stay a defendant's death sentence while the review of the petition for postconviction relief is pending. Therefore, time is of the essence as a defendant could be deprived of his life while the petition is being determined by the trial and appellate courts.

{¶ 45} It is apparent that the Supreme Court recognized this urgency and the need for an interlocutory appeal when it included language under Crim.R. 42(E)(4) that "[t]he appeal of an order regarding appointment of experts shall be governed by App.R. 11.1." App.R. 11.1 governs cases placed on an appellate court's "accelerated calendar." Notably, App.R. 11.1(A) was also amended on July 1, 2017, and states,

> In all capital cases, as defined in Crim.R. 42, the appeal of an order regarding appointment of experts shall, upon request by defense counsel, be under seal and conducted ex parte and shall be handled pursuant to an accelerated calendar under this rule and local rules adopting an accelerated calendar.

{¶ 46} Although, as we note above, Crim.R. 42 and App.R. 11.1 are procedural rules and therefore cannot provide jurisdiction on their own, we can nonetheless consider the policy expressed by these rules when determining whether an appeal after final

20.

judgment would be "meaningful and effective" under R.C. 2505.02(B)(4)(b). In this case, given the unique nature of a capital proceeding involving an indigent defendant, and the corresponding risk that a defendant—lacking the funds to hire experts on his or her own—may be wrongly executed while postconviction proceedings remain pending, we find that judicial economy tips the balance in favor of immediate review. Accordingly, similar to *Thomasson*, this court makes a "narrow and limited" holding that under R.C. 2505.02(B)(4), a trial court's order denying an indigent defendant expert funding under Crim.R. 42(E) is a final, appealable order.

### B. The Trial Court did not Abuse its Discretion in Denying Powell's Motion for Funds to Hire Experts

{¶ 47} Turning to the merits of Powell's first assignment of error, Powell argues that the trial court erred by denying his motion for expert funds because the trial court did not explicitly reference Crim.R. 42(E) in its order. Instead, the trial court stated that Powell's request for expert funding was "outside the contemplation of Ohio's post-convictions statutes," which Powell claims is incorrect in light of Crim.R. 42(E). Powell also argues that his need for expert funding is "particularly great" because his trial counsel was ineffective for not presenting expert testimony regarding "[t]he effects of multi-generational substance abuse" during the mitigation proceedings.

{¶ 48} Under Crim.R. 42(E), the trial court has the discretion to appoint experts for indigent defendants in postconviction reviews of capital cases. Accordingly, we will review the trial court's order for an abuse of discretion. "A trial court will be found to

21.

have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound." *State v. Nisley*, 3d Dist. Hancock No. 5-13-23, 2014-Ohio-981, ¶ 16, citing *State v. Boles,* 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 16-18 (2d Dist.).

{¶ 49} We first note that the trial court's observation that the appointment of expert witnesses to indigent defendants is "outside the contemplation of Ohio's post-convictions statutes" is *not* incorrect, as Powell argues. Under R.C. 2953.21(J), indigent defendants in capital cases are entitled to appointed counsel in postconviction proceedings, but the statute is silent as to whether an indigent defendant in a capital case is also entitled to funds to hire experts. And, as already discussed, Crim.R. 42(E) does not provide indigent defendants with a right *to receive* expert funding in postconviction reviews of capital cases. Rather, Crim.R. 42(E) merely provides a procedure that courts must follow when an indigent defendant requests funding for experts in capital postconviction proceedings, and clarifies that trial courts have the discretionary "authority" to grant, or deny, such requests.

{¶ 50} Moreover, Powell fails to acknowledge that the trial court did not deny his motion solely because his expert-funding request was outside the contemplation of Ohio's postconviction statutes. Rather, the trial court stated that it was denying the motion "[f]or [that] reason, *in addition to those noted by the State in its opposition * * *.*" (Emphasis added.)

22.

{¶ 51} In its opposition to Powell's motion, the state argued that Powell's request should be denied because the anticipated subject matter of the experts' testimony was barred by res judicata. As the state pointed out, Powell argued on direct appeal "that his counsel were ineffective by failing to retain a substance-abuse expert to testify about his history of alcohol and drug abuse." *Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, at ¶ 210. The Supreme Court of Ohio, however, disagreed and found that Dr. Wayne Graves, "a clinical and forensic psychologist, provided expert testimony during mitigation regarding Powell's drug and alcohol abuse" and that Dr. Graves's testimony "fulfill[ed] the same functions as the expert assistance sought." (Internal quotations omitted.) *Id.* at ¶ 211.

{¶ 52} Thus, given that Powell's lack of a substance-abuse expert was already raised on his direct appeal, the state argued the testimony of the requested substance-abuse experts would be barred by res judicata and the trial court should deny Powell's request for funding on that basis. The trial court was persuaded by this argument and denied Powell's motion, at least in part, on those grounds.

{¶ 53} On appeal (as in the trial court) Powell ignores the state's arguments relating to res judicata. Instead, Powell relies almost exclusively upon his contention that Crim.R. 42(E) now provides indigent defendants with a "right" to expert funding in postconviction reviews of capital cases—which, as discussed, is not true. To the extent that Powell addresses the actual merits of his motion on appeal, he merely argues that he has a "particularly great" need for expert funding at this juncture because "[t]he effects of

23.

multi-generational substance abuse *should have been thoroughly investigated and presented by a substance abuse expert at trial but, due to counsel's failures, it was not.*" (Emphasis added.)

{¶ 54} But because the Supreme Court of Ohio has already considered whether "his counsel were ineffective by failing to retain a substance-abuse expert to testify about his history of alcohol and drug abuse," *Powell* at ¶ 210—and because Powell does not make any effort to explain why his motion for expert funding should not have been denied on the grounds that were advanced by the state in its opposition brief to the trial court—we simply cannot find that the trial court's decision was "contrary to law, unreasonable, not supported by the evidence, or grossly unsound." *Nisley*, 3d Dist. Hancock No. 5-13-23, 2014-Ohio-981, at ¶ 16.

{¶ 55} For these reasons, we find that the trial court did not abuse its discretion when denying Powell's motion for expert funding, and Powell's first assignment of error is not well-taken.

### C. Ohio's Death Penalty Scheme is not Unconstitutional Under *Hurst*

{¶ 56} In his second assignment of error, Powell claims that the trial court erred by denying his Crim.R. 33 motion for new mitigation trial. We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *State v. Schiebel*, 55 Ohio St.3d 71, 76, 564 N.E.2d 54 (1990).

{¶ 57} Powell's motion for new mitigation trial was premised entirely upon *Hurst*, ___ U.S. ___, 136 S.Ct. 616, 193 L.Ed.2d 504, which found Florida's capital sentencing

24.

scheme to be unconstitutional. In his motion, Powell argued that "the United States Supreme Court decision in *Hurst* signaled a sea-change in death penalty jurisprudence" and "[a]fter *Hurst*, it is clear that Ohio's death penalty scheme is unconstitutional." The Supreme Court of Ohio, however, has explicitly—and repeatedly—found that Ohio's capital sentencing scheme is not unconstitutional under *Hurst*. *State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, 108 N.E.3d 56; *see also State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 279; *State v. Goff*, 154 Ohio St.3d 218, 2018-Ohio-3763, 113 N.E.3d 490, ¶ 31-40.

{¶ 58} In Ohio, to face the possibility of a death sentence, a defendant must be charged with both aggravated murder and one or more of the specifications of aggravating circumstances that are outlined in R.C. 2929.04(A). *Mason* at ¶ 7. Then, at trial, the state must prove guilt of the principal charge and one or more of the capital specifications beyond a reasonable doubt. R.C. 2929.04(A); R.C. 2929.03(B); *Mason* at ¶ 8. If a jury finds the defendant guilty of the principal offense and at least one specification, the penalty (i.e., either life imprisonment or death) "shall be determined * * * [b]y the trial jury and the trial judge * * *." R.C. 2929.03(C)(2)(b); *Mason* at ¶ 9.

{¶ 59} At the sentencing phase, the court and jury shall consider (1) any presentence investigation or mental examination report (if either is requested by the defendant), (2) the trial evidence relevant to the aggravating circumstances the offender was found guilty of committing, and relevant to any mitigating factors, (3) additional testimony and evidence relevant to the nature and circumstances of the aggravating

circumstances and any mitigating factors, (4) any statement of the offender, if given, and (5) the arguments of counsel. R.C. 2929.03(D)(1); *Mason* at ¶ 10. At this phase, the state must prove beyond a reasonable doubt that "the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death." R.C. 2929.03(D)(1). If the jury unanimously finds, beyond a reasonable doubt, that the aggravating circumstances outweigh any mitigating factors, the jury shall recommend a death sentence. R.C. 2929.03(D)(2). Absent such a finding, the jury shall recommend that the court impose a life sentence, and the trial court shall impose the life sentence recommended. *Id.* In addition, if the jury fails to reach a unanimous sentencing determination, the trial court must impose a life sentence. *Mason* at ¶ 11.

{¶ 60} Upon a jury's unanimous recommendation that the death sentence be imposed, the trial court shall impose a sentence of death *only if* it also finds, beyond a reasonable doubt, that the aggravating circumstances outweigh any mitigating factors. R.C. 2929.03(D)(3). Otherwise, the trial court must impose a term of life imprisonment. *Id.* In either case, the trial court must issue a separate opinion with its specific findings. R.C. 2929.03(F).

{¶ 61} Powell argues that this capital sentencing scheme is indistinguishable from Florida's pre-*Hurst* capital sentencing scheme, which the U.S. Supreme Court found to be unconstitutional under the Sixth Amendment. *Hurst*, ___ U.S. ___, 136 S.Ct. 616, 193 L.Ed.2d 504. Florida law previously required the jury, during the sentencing phase, to

issue an "advisory sentence" by majority vote (recommending death or life imprisonment), after which the trial court weighed the aggravating and mitigating circumstances, and imposed a sentence of life imprisonment or death "'[n]otwithstanding the recommendation of a majority of the jury * * *.'" *Id.* at 620, quoting Fla.Stat. 921.141(3). The U.S. Supreme Court determined that Florida's scheme violated the Sixth Amendment of the U.S. Constitution because the jury provided a "mere recommendation" to the judge and "the judge alone [was required] to find the existence of an aggravating circumstance," *id.* at 624, and because the jury was "not require[d] * * * to make the critical findings necessary to impose the death penalty." *Id.* at 622.

{¶ 62} Powell argues that, like the Florida laws at issue in *Hurst*, Ohio's capital sentencing structure requires a "mere recommendation" by the jury in favor of a death sentence and, therefore, violates the Sixth Amendment because the ultimate death sentence is imposed by the judge alone. The Supreme Court of Ohio, however, has expressly rejected this argument and concluded that "Ohio law requires the critical jury findings that were not required by [Florida's capital sentencing scheme]" and "Ohio's death-penalty scheme, therefore, does not violate the Sixth Amendment." *Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, 108 N.E.3d 56, at ¶ 21; *see also Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, at ¶ 279; *Goff*, 154 Ohio St.3d 218, 2018-Ohio-3763, 113 N.E.3d 490, at ¶ 35. That is because, under Ohio law, a jury must find the offender guilty beyond a reasonable doubt of aggravated murder and at least one aggravating circumstance specification (R.C. 2929.03(B)), a jury must make a unanimous

27.

finding at the sentencing phase that the state has proven, beyond a reasonable doubt, that the aggravating circumstances that the offender was found guilty of committing outweigh any mitigating factors (R.C. 2929.03(D)(2)), and a trial court may impose a death sentence *only if* the jury has recommended death (*id.*). Thus, unlike pre-*Hurst* Florida law, in Ohio, a trial court is unable to increase the defendant's possible sentence on the basis of its own findings—which would be unconstitutional—and, instead, serves as a precaution against "wayward juries." *Mason* at ¶ 40.

{¶ 63} Powell also argues that Ohio's capital sentencing scheme is unconstitutional because, as in *Hurst*, the trial judge is required to independently weigh all aggravating circumstances and mitigating factors before imposing the death penalty and, according to Powell, a death sentence is therefore predicated upon impermissible fact-finding by the judge. The Supreme Court of Ohio has rejected this argument too. The court has expressly found that the weighing that occurs in the sentencing phase "'is *not* a fact-finding process subject to the Sixth Amendment.'" (Emphasis sic.) *Mason* at ¶ 29, quoting *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 60; *see also Goff* at ¶ 36. Rather, the Sixth Amendment is satisfied once a jury finds the defendant guilty, beyond a reasonable doubt, of aggravated murder and at least one capital specification at trial. *Mason* at ¶ 29.

{¶ 64} For the foregoing reasons we find that Ohio's death penalty scheme is not unconstitutional under *Hurst*. Accordingly, the trial court did not abuse its discretion by

28.

denying Powell's motion for a new mitigation trial under *Hurst*. Powell's second assignment of error is not well-taken.

## {¶ 65} Conclusion

{¶ 66} In conclusion, Powell's two assignments of error are not well-taken. We affirm the August 16, 2018 orders of the Lucas County Court of Common Pleas that denied Powell's motion for funding for experts to assist with his postconviction petition, and denied Powell's motion for a new mitigation trial.

{¶ 67} Powell is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.
                                                        JUDGE

Christine E. Mayle, P.J.
CONCUR.
                                                        JUDGE

Gene A. Zmuda, J.
CONCURS, IN PART, AND
DISSENTS, IN PART, AND
WRITES SEPARATELY.
                                                        JUDGE

**ZMUDA, J., concurring, in part, and dissenting, in part:**

{¶ 68} I concur with the majority's conclusion that Ohio's death penalty scheme is not unconstitutional under the United States Supreme Court's decision in *Hurst*. However, I must respectfully dissent from the majority's determination that the trial court did not abuse its discretion in denying Powell's motion for funds to hire experts, because I find that the trial court's order denying the motion is not final and appealable under R.C. 2505.02(B)(4).

{¶ 69} In order to find that the trial court's denial of expert funding was a final, appealable order under R.C. 2505.02(B)(4), we must conclude (1) that the funding of experts in a capital case is a "provisional remedy," and (2) that Powell cannot obtain meaningful review and an effective remedy through an appeal of the trial court's ultimate decision on his postconviction petition. I find neither of these elements are met in this case.

{¶ 70} As to the first element, I would find that a proceeding seeking funds to hire an expert is not a "provisional remedy" under R.C. 2505.02(B)(4). Pursuant to R.C. 2505.02(A)(3), a provisional remedy is "a proceeding ancillary to an action." The Ohio Supreme Court, in *State v. Muncie*, 91 Ohio St.3d 440, 746 N.E.2d 1092 (2001), defined an ancillary proceeding as "'one that is attendant upon or aids another proceeding.'" *Id.* at 449, quoting *Bishop v. Dresser Industries, Inc.*, 134 Ohio App.3d 321, 324, 730 N.E.2d 1079 (3d Dist.1999). The court later explained that an ancillary proceeding is "[a]n action, either at law or in equity, that grows out of and is auxiliary to another suit and is

30.

filed to aid the primary suit, to enforce a prior judgment, or to impeach a prior decree."

*State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 47.

{¶ 71} A proceeding seeking funds to hire an expert does not grow out of a postconviction proceeding, but is instead a simple discovery matter. Generally, discovery orders are not final and appealable under R.C. 2505.02(B)(4). *Concheck v. Concheck*, 10th Dist. Franklin No. 07AP-896, 2008-Ohio-2569, ¶ 8. The one exception to this principle is contained within the express language of R.C. 2505.02(B)(4), which states that discovery of a privileged matter is a proceeding ancillary to an action and therefore qualifies as a provisional remedy. The Ohio Supreme Court noted this sole statutory exception to the general rule excluding discovery orders from the purview of a provisional remedy under R.C. 2505.02(B)(4) in *Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176. There, the court examined whether a request for a physical examination under Civ.R. 35(A) was a provisional remedy under R.C. 2505.02(B)(4), and stated:

> The amended statute added the provisional-remedy section and
> defined "provisional remedy" as "a proceeding ancillary to an action,
> including, but * * * not limited to, * * * discovery of a privileged matter."
> R.C. 2505.02(A)(3). If the order in question affects the discovery of a
> privileged matter it is by definition a provisional remedy and meets the first
> step of the test. The canon expressio unius est exclusio alterius tells us that
> the express inclusion of one thing implies the exclusion of the other.

31.

Black's Law Dictionary (8th Ed.2004) 620. The General Assembly stopped short of including all discovery orders in the provisional-remedy section.

> The request for a physical examination under Civ.R. 35(A) is a discovery order that is not a provisional remedy and is not a final, appealable order under R.C. 2505.02(B)(4).

*Id.* at ¶ 24-25.

{¶ 72} The logic that underlies this principle is well grounded. We should adhere to the general rule that discovery orders are not provisional remedies. "If we start denominating discovery orders as 'provisional remedies,' then virtually every discovery order would be appealable, which would frustrate the legislative intent behind the statute." *Harrell v. Management and Training Corp.*, 1st Dist. Hamilton No. C-180417, 2019-Ohio-2816, ¶ 10. The facts in this case, moreover, illustrate this point as a motion for discovery is currently pending before the trial court in the underlying postconviction proceeding.

{¶ 73} Because Powell's motion for funds to acquire an expert is a proceeding relating to discovery, and because the proceeding does not relate to the discovery of a privileged matter, I find that such a proceeding is not a provisional remedy.

{¶ 74} Additionally, I conclude that the trial court's denial of Powell's motion for expert funds is not final and appealable because Powell can obtain meaningful review and an effective remedy through an appeal following the trial court's decision on his

32.

postconviction petition. In determining whether an appeal after final judgment would afford a meaningful or effective remedy, courts must consider whether there is a harm such that appeal after final judgment would not "'rectify the damage.'" *Muncie, supra*, 91 Ohio St.3d at 451, 746 N.E.2d 1092, quoting *Gibson–Myers & Assocs., Inc. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999). In such circumstances, the matter is final and appealable because "'the proverbial bell cannot be unrung.'" *Id.*, quoting *Gibson–Myers* at *2.

{¶ 75} In this case, the trial court's denial of Powell's motion for funds to hire an expert does not harm Powell in a manner that cannot be undone. If the denial turns out to be erroneous, and if that error prejudices Powell's ability to conduct meaningful discovery leading to the denial of his postconviction petition, Powell has an effective remedy through the reversal of the trial court's decision on the postconviction petition and an order from this court directing the trial court to grant him funds to hire an expert. At that point, Powell will be able to receive the relief he has requested, and the damage caused by the trial court's denial of his motion for funds would be rectified.

{¶ 76} In its decision, the majority relies upon principles of judicial economy to tip the scales in favor of immediate review under R.C. 2505.02(B)(4), because time is of the essence in postconviction proceedings involving a defendant who has been sentenced to death. However, the phrase "judicial economy" is not contained within R.C. 2505.02, and appellate courts are not free to expand the jurisdiction granted by claiming it would be more efficient. *See Harrell*, *supra*, 1st Dist. Hamilton No. C-180417, 2019-Ohio-

33.

{¶ 77} 2816, at ¶ 13 ("While we are certainly mindful of judicial economy, we cannot tinker with our jurisdictional limits simply because the judicial economy winds blow in a particular direction. We must adhere to the constitutional and statutory constraints on our jurisdiction.").

{¶ 78} In contrast to the majority, I find that addressing the trial court's denial of Powell's motion for funds to hire an expert actually *inhibits* judicial economy. This is particularly true here, where the trial court is yet to rule on Powell's underlying discovery motion. Given the procedural posture of this case, notions of judicial economy favor dismissal of the portion of Powell's appeal relating to the request for funds in order to allow the trial court to resolve all of the discovery disputes and rule on the merits of Powell's postconviction petition. This would allow us to review all of Powell's arguments in their wider context, thereby enabling us to render one decision rather than piecemeal decisions.

{¶ 79} In sum, I find that the trial court's denial of Powell's motion for funds to hire an expert is not a final, appealable order under R.C. 2505.02(B)(4), because a proceeding seeking funds to hire an expert is not a "provisional remedy" and Powell can obtain meaningful review and an effective remedy through an appeal following the trial court's decision on his postconviction petition. Because the majority holds otherwise, I must respectfully dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.